IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KAREN McCLARNON, | ) |
| | ) |
| PLAINTIFF, | ) |
| | ) Civil Action No.   2:20-cv-779 |
| v. | ) |
| | ) |
| BOROUGH OF VANDERGRIFT, | ) |
| KATHY CHVALA, individually and in | ) |
| her official capacity, | ) |
| CHRISTINE WILSON, individually and | ) |
| in her official capacity, | ) |
| JOHN USKURAITIS, individually and in | ) |
| his official capacity, | ) |
| THOMAS HOLMES, individually and in | ) |
| his official capacity, | ) |
| LENNY COLLINI, individually and in his | ) |
| official capacity, | ) |
| BARBARA TURIAK, individually and in | ) |
| her official capacity, | ) |
| JOSEPH M. CAPORALI, individually and | ) |
| in his official capacity, | ) |
| NATHAN RIGATTI, individually and in | ) |
| his official capacity, | ) |
| | ) |
| DEFENDANTS | ) |

## **COMPLAINT - CIVIL ACTION**

AND NOW, comes Plaintiff Karen McClarnon by her undersigned counsel, and files the within Complaint - Civil Action: (a) to validate Plaintiff Karen McClarnon's right to hold and exercise the powers of the elected office of Council Member of Vandergrift Borough; and (b) to redress Defendants' violation of the civil rights of Plaintiff. In support of her Complaint, Plaintiffs allege as follows:

1. Plaintiff Karen McClarnon is an adult individual who resides at 520 Hancock Avenue,

Vandergrift PA 15690 and a member of Vandergrift Borough Council. She is also a member of Vandergrift Borough Council's Pool Committee, the Buildings and Grounds Committee, the Library Committee, and is Chairman of the Trees Committee.

2. Defendant Borough of Vandergrift, is a Pennsylvania Borough and body politic, organized and operating under the Pennsylvania Borough Code, 8 Pa.C.S.A. §101 *et. seq.*, and the laws of the Commonwealth of Pennsylvania, and having a mailing address located at 109 Grant Avenue, Vandergrift, Westmoreland County, Pennsylvania 15690.

3. Defendant Kathy Chvala is a member of Vandergrift Borough Council and an adult individual who resides at 222 Emerson Street, Vandergrift, Westmoreland County, Pennsylvania 15690.

4. Defendant Christine Wilson is a member of Vandergrift Borough Council and an adult individual who resides at 113 Indiana Avenue, Vandergrift, Westmoreland County, Pennsylvania 15690.

5. Defendant John Uskuraitis is a member of Vandergrift Borough Council and an adult individual who resides at 322 Beech Street, Vandergrift, Westmoreland County, Pennsylvania 15690.

6. Defendant Thomas Holmes is a member of Vandergrift Borough Council and an adult individual who resides at 512 Bryant Street, Vandergrift, Westmoreland County, Pennsylvania 15690.

7. Defendant Lenny Collini is a member of Vandergrift Borough Council and an adult individual who resides at 513 Hancock Avenue, Vandergrift, Westmoreland County, Pennsylvania 15690.

8. Defendants Chvala, Wilson, Uskuraitis, Collini and Holmes at all times relevant hereto have been elected Council Members of Vandergrift.

9. Pursuant to the Borough Code, the corporate power of Vandergrift is vested in the Vandergrift Borough Council. See, 8 Pa. C.S.A. 1006, 1007.

10. Defendant Barbara Turiak is the Mayor of Vandergrift Borough and an adult individual who resides at 216 Franklin Avenue, Westmoreland County, Pennsylvania 15690. She was elected in the general election of November, 2017, and took office in January 2018. Her elected term is four (4) years and expires at the end of December 2022. On information and belief, she attends council meetings in her capacity as Mayor.

11. Defendant Joseph M. Caporali is the Chief of Police, and, on information and belief, attends borough council meetings in his capacity as Chief of Police. His mailing address is 109 Grant Avenue, Vandergrift, Westmoreland County, Pennsylvania 15690.

12. Patrolman Nathan Rigatti is a police officer in Vandergrift who is believed to be residing at 1871 Dime Road Vandergrift, Armstrong County, Pennsylvania 15690.

13. At all times material hereto, the Defendant council members, as well as Defendants Rigatti, Collini, Turiak and Caporali have acted as the agents of Vandergrift, under color of state law, and in combination with one another.

14. Defendants Rigatti, Collini and Chief Caporali are sued for their acts of defamation and slander which were carried out in an apparent attempt to ruin Plaintiff McClarnon's reputation and drive her from public office.

15. Since January, 2020, all Defendants have acted unlawfully and intentionally to deprive Plaintiff McClarnon of the office of Member of Council to which she was elected by the citizens of Vandergrift Borough.

16. Some of the matters McClarnon has complained about include, but are not limited to the following:

    a. McClarnon has complained that the borough has no written or standardized operating procedures, which gives rise to the possibility that errors are being committed either accidentally or intentionally and the appearance of impropriety.

    b. McClarnon has complained that she was treated differently by being required to sign an affidavit of residency while no current member of council signed such an affidavit.

    c. McClarnon has raised questions about and complained that one Anthony Ferrante, head of Casino Theatre Restoration Management, Inc., who has a 20 year lease for the Borough owned Casino Theatre, conducts activities on the property with no supervision by Council and in violation of the lease.

        i. Ferrante has erected a structure at an estimated value of $40,000 with no permission or oversight from council, in violation of the lease.

        ii. Ferrante seems to believe he can operate on the property as he pleases with no supervision by council.

        iii. Ferrante has removed trees on the property without permission from council or the tree commission.

    d. One month after she was elected in December, 2019, McClarnon began questioning the fiscal management of the borough-owned pool.

        i. Pool employees are hired without contracts, leading to confusion about who is responsible for their pay.

    ii. There is no accountability for earnings and expenditures of money for the pool.

    iii. Paper bags of money collected from the gate and the food vending operation are delivered daily to the borough Secretary, Mr. DelleDonne, without accountability.

    iv. Mr. DelleDonne has said to McClarnon that he has a set of books that no one will ever see.

    v. During certain periods between 2007 and 2019 pool concession workers were paid by the borough while insiders ran the pool concession without paying their workers.

e. McClarnon has complained that the police department has attempted to intimidate her after she was elected to borough council by pulling over her husband in front of the family residence without cause.

f. The police department then declined to provide information concerning the report concerning this incident, and when McClarnon's husband filed a Right to Know request concerning the police report, the police declined to furnish the report on the grounds of a possible ongoing criminal investigation.

g. McClarnon has questioned and complained about nepotism.

    i. The daughter of the president of council is employed as the creator of the web site and the email system for council, although she has no experience in this area and the employment is without a contract.

    ii. The daughter of the borough secretary, Mr. DelleDonne, is employed without contract to clean the borough building and the police office.

iii. Neither position was awarded on the basis of bids.

h. McClarnon has complained that Council has conducted certain meetings in secret and in violation of the Pennsylvania Sunshine Law, which has the effect of depriving her of her right to participate and her constituents of the right to know what council does.

17. The manner in which Defendants have responded to McClarnon's complaints include:

a. As indicated above, the police department has declined to provide a police report concerning their unjustified pulling over of McClarnon's husband in front of his house.

b. Other examples of attempts at police intimidation are that when Plaintiff asked Officer Joe Gray whether there was an Emergency Management meeting on March 19, he lied and said there was not.

c. In a show of force and an attempt to intimidate Plaintiff McClarnon, two police officers are stationed at each council meeting.

d. Chief Caporali has made slanderous remarks about McClarnon to some of his patrolmen, as is indicated below in paragraph 17 x.

e. Patrolman Nathan Rigatti also made slanderous remarks about McClarnon and called her with an admission he had done this.

f. Council has refused to provide McClarnon, who is on the Buildings and Grounds Committee, with keys or an inventory of keys to any building, although some non-members of Council have keys.

g. Council has refused to give McClarnon prior notice of meetings.

      i. She had no notice of a January meeting with the Kiski Area School District concerning Davis Field.

      ii. Although Plaintiff McClarnon is a member of the pool committee, she was not informed of a meeting during the last week of March 2020 during which John Uskuraitis, a Councilman and chair of the Parks/Pool committee, rehired the pool manager and hired a new assistant manager. McClarnon had no awareness there was to be a meeting or that anyone was to be hired.

h. Neither the Buildings and Grounds committee nor the Parks and Recreation committee have shared requested information with McClarnon since she was sworn in January 2020.

i. On April 16, 2020, Christine Wilson, councilwoman, called McClarnon to inform her that John Uskuraitis and Thomas Holmes, councilmembers and Pool Committee members, have enlisted the help of a <u>former</u> Council member Pete Basile to help them with the pool. McClarnon knew nothing of this and was not asked herself to participate.

j. Other information that has not been shared concerns procedures. On April 10, 2020, Plaintiff McClarnon, as chairman of the trees committee, asked a Borough worker to remove a small tree that had fallen on a sidewalk near the elementary school, creating a tripping-safety hazard. Shortly thereafter, Councilwoman Christine Wilson, chair of the Streets Committee, called Plaintiff complaining that McClarnon had acted outside her authority. There is no written policy on how to handle a suddenly emerging hazard, and McClarnon acted in good faith to address it, but was, nonetheless, chastised.

k. Similarly, McClarnon was informed after the fact that borough employees have been given half days because of Coronavirus, but she has no idea how this or any executive decision is reached and is excluded from participation in these decisions. This matter was never discussed at a public meeting or properly called executive session, nor was any vote ever taken.

l. Plaintiff McClarnon alleges that having no written policy on how business is to be conducted, emergencies or otherwise, is a deliberate ploy to drive her and other unwanted council members to resignation hoping they will act and then complaining they have done something wrong.

m. Plaintiff McClarnon found out about an Emergency Management meeting on March 19, 2020 through a neighbor and attended.

n. At the March 19 Emergency Management meeting, Plaintiff McClarnon was asked to leave by Councilman Holmes. He shouted, "Get out." When she declined to leave, Mr. Homes directed police officers, who were present, to remove her. They declined.

o. At the same meeting, Councilwoman Chvala stated that Plaintiff would "pay a price" and be "punished" for attending that meeting.

p. Councilwoman Chvala's comments were made in the face of her knowledge that McClarnon had filed an Ethics Commission complaint against her for using her position to aid in the employment of her (Chvala's) daughter, and to participate in voting to pay her daughter's salary or compensation.

q. Councilwoman Chvala further threatened Plaintiff that she had broken the Sunshine Law by attending the meeting, apparently attempting to discourage her from

attending further committee meetings.

r.  Plaintiff McClarnon also alleges that the email system set up for council members by the president's daughter is dysfunctional, and that the purpose, apart from funneling tax money to close associates and family members, is to keep minority members of Council from a means of communication and from learning of council activities and meetings.

s.  As illustration of improper funneling of tax monies to insiders in Vandergrift government, McClarnon was informed that protective masks were made available to local police at no cost, but Vandergrift police chose not to pick up the free masks because the wife of the Borough Secretary, Mr. DelleDonne would be hand-making masks out of fabric, presumably for remuneration.

t.  One of the reasons Plaintiff McClarnon is precluded from communicating with council is that some majority members refuse to talk with her. Councilmen Holmes, for example, stated emphatically on two public occasions, at the monthly council meeting-February 3, 2020 and at the Safety Committee meeting- March 19, 2020, that he will never communicate with Plaintiff McClarnon due to advice he claimed he received from an attorney,

u.  Councilman Uskuraitis has made it known that he has blocked Plaintiff McClarnon from calling him on his phone. In a text message, he referred to Plaintiff McClarnon as a "a psycho" who "just wants to fight with everyone."

v.  Councilman Collini refuses to answer any message or communication sent by Plaintiff McClarnon.

w.  Councilman Collini has spread false rumors that Plaintiff was fired from her job as

  CMA (Cardinal Maida Academy) Principal for theft of school monies; that Plaintiff and her family filed a complaint against the borough "to make money," that Plaintiff suffered a nervous breakdown and was hospitalized because of that condition, all in an attempt to discredit Plaintiff McClarnon and drive her from public office.

 x. The Police Chief Joseph Caporali falsely told a patrolman on the Vandergrift police force that Plaintiff McClarnon, who phoned into a meeting of council because she was out of town, was drunk on the phone. His apparent purpose was to besmirch McClarnon's reputation, and like Defendant Collini, discredit her and drive her from public office.

18. All defendants were operating under color of state law when these statements were made.

19. No other members of council were subject to the same or similar treatment as Plaintiff McClarnon.

20. All of these actions have been performed in an attempt to keep Plaintiff McClarnon from participating in Vandergrift Borough Council business and to prevent her from carrying out her constitutionally protected and mandated duties in retaliation for her criticisms of the borough and of council.

21. Councilman Collini's remarks, referred to in subparagraph 17 w. above, are all slanderous and false. Plaintiff McClarnon has never stolen money as alleged; has never been fired from any school district; has never sued the borough to "make money," and has never been hospitalized for mental illness. Attorney Lafferty has written to Mr. Collini demanding that he cease and desist attacking Ms. McClarnon.

22. The allegation by Police Chief Caporali that McClarnon was drunk on her phone call to council referred to in subparagraph 17 x. is also slanderous and false. Attorney Lafferty has written to Mr. Caporali with respect to the allegation Caporali has made against Ms. McClarnon and demanded that he cease and desist spreading this allegation.

23. All of these acts have been carried out by Defendants acting in their official capacities and also as individuals acting beyond their mandates to represent the Borough.

24. Defendants have: (a) attempted to intimidate Plaintiff McClarnon, (b) prevented Plaintiff McClarnon from performing her appointed duties as Councilwoman responsible for Vandergrift's public facilities and for reporting to the public the business of Vandergrift government, (c) refused to communicate Borough business or to include Plaintiff McClarnon in normal channels of communication.

25. All of the foregoing actions have been motivated by Defendants' desire to silence Plaintiff McClarnon who has been an outspoken vocal, minority critic of Defendants' policies and actions as majority members of Vandergrift Borough Council.

## COUNT ONE

**Karen McClarnon v. All Defendants in their official capacities and as Individuals**
**<u>Violation of Due Process</u>**

26. The averments set forth in Paragraphs 1 through 25 are incorporated by reference.

27. This Count involves violations of federal law under the Fourteenth Amendment to the United States Constitution.

28. As an elected Councilwoman of Vandergrift Borough, Plaintiff McClarnon has a property right in her office.

29. The Fourteenth Amendment protects against deprivations of life, liberty, or property by the

State or by those acting under color of law, without due process of law.

30. As a direct and proximate result of their actions set forth in Paragraph 16 & 17 above, Defendants have deprived, or attempted to deprive, and are continuing to deprive or attempt to deprive Plaintiff McClarnon of her property and liberty (her right to hold public office) without due process of law.

**WHEREFORE**, Plaintiff respectfully prays pursuant to Count One that this Honorable Court:

1. Enjoin and restrain Defendants from all of the acts of defamation such as described in paragraph 16 & 17 above; and
2. Award Plaintiff McClarnon her costs in this proceeding, including the payment of reasonable attorney's fees; and
3. Damages in an amount the court deems appropriate;
4. Grant such other and further relief as is deemed appropriate.

## COUNT TWO

**Karen McClarnon v. All Defendants in their official capacities and as Individuals**
<u>**Violation of Due Process**</u>

31. The averments set forth in Paragraphs 1 through 30 are incorporated herein by reference.
32. This count involves violation of the Fourteenth amendment.
33. As a direct proximate result of their actions set forth in Paragraph 16 & 17 above, Defendants without legitimate reason, have treated Plaintiff McClarnon differently from similarly situated other council members, and therefore have unlawfully discriminated against Plaintiff McClarnon in violation of the Fourteenth Amendment to the United States Constitution.

**WHEREFORE**, Plaintiff respectfully prays pursuant to Count Two that this Honorable Court:

1. Enjoin and restrain Defendants from continuing any of the practices described in Paragraph 16 & 17; and

2. Award Plaintiff McClarnon her costs in this proceeding, including the payment of reasonable attorney's fees; and

3. Damages in an amount the court deems appropriate;

4. Grant such other and further relief as is deemed appropriate.

## COUNT THREE
### Karen McClarnon v. Defendants Rigatti, Collini and Caporali in their official Capacities and as Individuals

### DEFAMATION and VIOLATION OF LIBERTY INTEREST

34. The averments set forth in Paragraphs 1 through 33 are incorporated herein by reference.

35. This count involves slanderous assaults on McClarnon in violation of her Fifth Amendment speech interest and her liberty interest under the Fourteenth Amendment.

36. As a direct proximate result of their actions set forth in Paragraph 16 subparagraphs m, ee, and ff above, Defendants without legitimate reason, have defamed and slandered Plaintiff McClarnon because of her speech critical of the borough and its council and have unlawfully infringed her liberty interest under the Fourteenth Amendment in holding public office.

37. The Supreme Court has held that defamation is only actionable under 42 U.S.C. § 1983 if it occurs in the course of or is accompanied by a change or extinguishment of a right or status guaranteed by state law or the constitution. *Paul v. Davis*, 424 U.S. 693, 701-712, 47 L. Ed. 2d 405, 96 S. Ct. 1155 (1976).

38. Holding borough office is such a right or status protected by the Fourteenth Amendment.

39. The slanderous statements were made in an attempt to make McClarnon seem ineligible for a seat on borough council.

40. Although Plaintiff McClarnon recognizes that Under Pennsylvania law, "high public officials" are absolutely immune from suit for defamation for statements made within the scope of their authority. *Lindner v. Mollan*, 544 Pa. 487, 677 A.2d 1194, 1196 (Pa. 1996), she asserts that the statements made by Rigatti, Collini and Caporali are not within their scope of their authority and that Rigatti is not a high public official.

41. Damages caused by these statements are per se injuries because they concern McClarnon's professional competence, her alleged criminality, her alleged mental illness and her alleged drunkenness.

42. If any of the things alleged were true, McClarnon's eligibility for public office would be in question.

**WHEREFORE**, Plaintiff respectfully prays pursuant to Count Three that this Honorable Court:

1. Enjoin and restrain Defendants from continuing any of the acts described in paragraph 16 & 17; and
2. Award Plaintiff McClarnon her costs in this proceeding, including the payment of reasonable attorney's fees; and
3. Damages in an amount the court deems appropriate.

### COUNT FOUR

**Karen McClarnon v. All Defendants in their official capacities and as Individuals**
<u>**Violation of Free Speech**</u>

43. The averments set forth in Paragraphs 1 through 42 are incorporated herein by reference.

44. This Count involves violations of the First Amendment.

45. As a direct and proximate result of their actions set forth in Paragraph 16 & 17 above, Defendants have unlawfully: (a) curtailed Plaintiff McClarnon's speech in violation of the First Amendment to the United States Constitution; and (b) violated Plaintiff McClarnon's First Amendment rights by retaliating against her for exercising her rights to Free Speech, political activity and political dissent.

**WHEREFORE**, Plaintiff respectfully prays pursuant to Count Four that this Honorable Court:

1. Enjoin and restrain Defendants from continuing violation of any of the acts described in paragraph 16 & 17; and
2. Award Plaintiff McClarnon her costs in this proceeding, including the payment of reasonable attorney's fees; and
3. Damages in an amount the court deems appropriate; and
4. Grant such other and further relief as is deemed appropriate.

**WHEREFORE**, Plaintiff further respectfully prays that this Honorable Court enjoin and restrain Defendants from: (a) continuing violation of any of the acts described in paragraph 16 & 17 herein; (b) award McClarnon her costs and attorney fees; (c) award damages in an amount the court deems appropriate; and (d) grant such other relief as the court deems appropriate.

Respectfully submitted,

_William Lafferty, Esquire_