IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KAREN MCCLARNON, | ) Civil Action No: 2:20-cv-00779 |
| ) | |
| Plaintiff, | ) |
| vs. | ) Magistrate Judge Maureen P. Kelly |
| ) | |
| BOROUGH OF VANDERGRIFT, | ) |
| KATHY CHVALA, individually and in her official capacity, | ) *Electronically Filed* |
| JOHN USKURAITIS, individually and in his official capacity, | ) |
| THOMAS HOLMES, individually and in his official capacity, | ) **Jury Trial Demanded** |
| LENNY COLLINI, individually and in his official capacity, | ) |
| JOSEPH M. CAPORALI, individually and in his official capacity, | ) |
| NATHAN RIGATTI, individually and in his official capacity, | ) |
| WILLIAM MOORE, individually and in his official capacity, | ) |
| TIMOTHY TURNER, individually, | ) |
| Defendants. | ) |

**DEFENDANTS' BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

I.      **INTRODUCTION**

Defendants Chief of Police Joseph Caporali and Officer Nathan Rigatti move for dismissal of three Counts of the Second Amended Complaint in which they are named pursuant to F.R.C.P. 12(b)(6). None of the factual averments as to Officer Rigatti arise to the level of a Constitutional violation. Chief Caporali is not alleged to have engaged in any conduct beyond advising Plaintiff that no reports existed as to two alleged incidents. Therefore Plaintiff failed, for the third time, to set out viable claims under the First Amendment (Count I), Substantive Due Process (Count III), and Failure to Train/Supervise (Count V).

**II.     STATEMENT OF THE CASE**

Plaintiff, a councilmember of the Vandergrift Borough Council, brings suit against Vandergrift Borough, four elected council members, Chief Caporali, Officer Rigatti, Officer Moore and a resident of the Borough. All claims arise out of various acts of alleged retaliation against Plaintiff due to her conduct as a council member. The specific allegations against Moving Defendants (Caporali and Rigatti) are scant at best. For purposes of clarity as to these specific Defendants the following are the factual averments as to each as gleaned from the the Second Amended Complaint:

As to Officer Rigatti:

- Plaintiff contends that Officer Rigatti at some unidentified time referred to her as a "crazy drunk bitch." ECF 35 at ¶55.

- Plaintiff alleges that Defendant Collini made a death threat against her and that Officer Rigatti was dispatched in response to her 911 call and investigated the threat. *Id*. at ¶¶53-55.

- As part of his investigation Rigatti asked a witness whether Plaintiff's husband ("Mr. McClarnon") was to blame for the incident which the witness denied.

- Defendant Rigatti allegedly made a statement to Plaintiff following her son's eighteenth birthday, "I have your son. He is eighteen. He's mine now …". *Id*. at ¶¶61-62.

- On March 10, 2019, while on duty, Rigatti followed and executed a traffic stop of Mr. McClarnon, but did not inform Mr. McClarnon of the reason for the stop. *Id*. at ¶¶63-64.

As for Chief Caporali the following are the universe of fact averments:

- Chief Caporali, at some unidentified date and time, told Plaintiff that there were no police reports regarding the alleged threats that were investigated by Ofc. Rigatti. *Id*. at ¶57.

- An incident allegedly occurred on January 17, 2021 involving Defendant Moore wherein Defendant Turner brutally assaulted her *Id*. at ¶¶74, 78. Chief Caporali told Plaintiff that the police department had no reports of the alleged assault. *Id*. at ¶79.

In summary then, out of 75 paragraphs of facts in the Second Amended Complaint there are essentially five alleged acts involving Officer Rigatti and two alleged facts involving Chief Caporalli. On this basis Plaintiff brings the following Counts against these specific defendants:

- **Count I** – First Amendment Retaliation against both Moving Defendants;

- **Count III** – Substantive Due Process, Abuse of Power/Official Oppression against both Moving Defendants; and

- **Count V** – Failure to Enact/Implement Policies, Properly Supervise and Train against Defendant Caporali

III.　　**STANDARD OF REVIEW**

When considering a Motion to Dismiss under the Federal Rules, the Court must accept as true all well pled allegations in Plaintiff's Second Amended Complaint, and construe them in a light most favorable to the Plaintiff. The Court may dismiss the claim if it appears beyond a reasonable doubt, the Plaintiff cannot prove those set of facts in support of a claim which would entitle him to relief. *Labove v. Lalley*, 809 F.2d. 220 (3d Cir. 1987). The Court may consider matters of public record. *Benefit Guarantee Corp. v. White Consol Industries*, 998 F. 2d. 1192, 1196 (3d Cir. 1993).

The Supreme Court has clarified its position on the standard under a Motion to Dismiss, in *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1974 (2007). The "no set of facts standard" found in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), has been abrogated in favor of requiring a Plaintiff to plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 127 S.Ct. at 1974. As a result of the *Twombly* holding, Plaintiffs must have "nudged their claim across the line from conceivable to plausible, or the Amended Complaint must be dismissed." *Id*.

> While a complaint attacked by a Rule 12(b)(6) Motion to Dismiss does not need detailed factual allegations, plaintiff's obligation [under Rule 8(a)(2)] to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and the formulated recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

*Id.* at 1964-65 (citations omitted).

The Court does not have to accept every allegation of Plaintiff's Second Amended Complaint as true. The Court need not credit "bold assertions" or "legal conclusions" in a complaint, when deciding a Motion to Dismiss. *Burlington Coat Factory SEC Litigation*, 114 F.3d 1410, 1429-30 (3d Cir. 1997). Further, unsupported conclusions and unwarranted inferences need not be accepted as true. *Trzaska v. L'Oreal USA, Inc.,* 865 F.3d 155, 159 (3d Cir. 2017). "When conducting our review, 'we must accept the allegations in the complaint as true . . . [but] are not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation.'" *Id. (quoting Morrow v. Balaski,* 719 F.3d 160, 165 (3d Cir. 2013) (alterations in original)). *Ikb Int'l S.A. v. Wilmington Trust Co., 2019 U.S. App. LEXIS 15069, *7* (3d Cir. May 21, 2019).

**IV.     ARGUMENT**

      **A.     No unconstitutional conduct occurred.**

It is well established than an individual, government defendant in a civil rights action "must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of *respondeat superior*. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

Beyond the requirement of personal involvement, Plaintiff must set forth facts that would support a violation of some Constitutional protection. To establish a §1983 claim, a plaintiff must show a deprivation of a "right secured by the Constitution and the law of the United States … by a person acting under color of state law" *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995).

The alleged conduct of each officer, assumed for purposes of the within motion as true, will be examined. Regarding Chief Caporali, when Plaintiff asked for copies of police reports on two separate occasions, Chief Caporali responded by advising that no reports existed. These alleged actions are devoid of the type of conduct that could be construed as violating Plaintiff's rights and it follows then that no unconstitutional conduct has been identified to support any cause of action.

As for Officer Rigatti, he cannot be constitutionally liable to Plaintiff for referring to her as a "crazy drunk bitch". Assuming for purposes of Rule 12 that the statement was made by the officer and that it would indeed be unprofessional, it is ironic to consider that the officer, like Plaintiff, has the right under the First Amendment to express his opinion, especially of an elected official. Making such a statement is not unconstitutional. In fact, efforts by municipalities to pass

internal policies that prohibit police officers from making disparaging comments regarding their superiors have been struck down. See *Gasparinetti v. Kerr and Barres*, 568 F.2d 311 (3d. Cir 1977).

Officer Rigatti was dispatched to a call involving alleged death threats directed at Plaintiff by another council member. The officer conducted an investigation but made no arrests. These allegations do not set forth any colorable Constitutional violation. As the Supreme Court held:

> But nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors. The Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security. It forbids the State itself to deprive individuals of life, liberty, or property without "due process of law," but its language cannot fairly be extended to impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means. Nor does history support such an expansive reading of the constitutional text. Like its counterpart in the Fifth Amendment, the Due Process Clause of the Fourteenth Amendment was intended to prevent government "from abusing [its] power, or employing it as an instrument of oppression," *Davidson v. Cannon,* supra, 474 U.S., at 348, 106 S.Ct., at 670; see also *Daniels v. Williams,* supra, 474 U.S., at 331, 106 S.Ct., at 665 (" ' "to secure the individual from the arbitrary exercise of the powers of government," ' " and "to prevent governmental power from being 'used for purposes of oppression' ") (internal citations omitted); *Parratt v. Taylor*, 451 U.S. 527, 549, 101 S.Ct. 1908, 1919, 68 L.Ed.2d 420 (1981) (Powell, J., concurring in result) (to prevent the "affirmative abuse of power"). Its purpose was to protect the people from the State, not to ensure that the State protected them from each other. The Framers were content to leave the extent of governmental obligation in the latter area to the democratic political processes.

*DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 195–96, 109 S. Ct. 998, 1003, 103 L. Ed. 2d 249 (1989)

Officer Rigatti allegedly made a threat against Plaintiff's son. There are no allegations that the officer followed through on his threat or otherwise caused her son any harm. Furthermore, Plaintiff's son is not a party to this litigation and so she has no standing to assert

claims on his behalf. Similarly, Plaintiff alleges that Officer Rigatti followed her husband and made a traffic stop but never indicated a reason for the stop. Plaintiff has no standing to assert a Constitutional violation allegedly suffered by her son or husband. See generally *Martin v. Unknown U.S. Marshals*, 965 F. Supp.2d 502 (D.N.J. 2013)

In summary, Plaintiff failed to identify a colorable Constitutional violation committed against Plaintiff and therefore, on this basis alone both Chief Caporali and Officer Rigatti should be dismissed entirely from this suit.

### B. First Amendment Retaliation

Moving Defendants herein adopt and incorporate Co-Defendant's well-reasoned motion to dismiss argument as to Count I as though fully set forth. *See* ECF 44.

To plead retaliation for the exercise of First Amendment rights, a plaintiff must allege: "(1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." *Id*. (citing *Thomas v. Indep. Twp.*, 463 F.3d 285, 296 (3d Cir. 2006) (internal citation omitted)); *see also Mack v. Warden Loretto FCI*, 839 F.3d 286, 297 (3d Cir. 2016) (applying this test to a claim of retaliation for the exercise of the right to petition). The *Mirabella* Court further illustrated that in evaluating the second criterion:

> [W]hether an act is retaliatory is an objective question. *Bistrian v. Levi*, 696 F.3d 352, 376 (3d Cir. 2012). We ask whether the act would deter a person of ordinary firmness, not whether the plaintiff was deterred. There is good reason for such a rule: we will not "reward" government officials for picking on unusually hardy speakers. At the same time, we recognize that government officials should not be liable when the plaintiff is unreasonably weak-willed . . ." *Bennett v. Hendrix*, 423 F.3d 1247, 1252 (11th Cir. 2005) (citation omitted).

*Mirabella,* 853 F.3d at 650.  In a retaliation claim, we ask "whether the Government is *punishing* the plaintiffs for exercising their rights." *Id*. at n. 5 (citing *Miller v. Mitchell*, 598 F.3d 148, 161 (3d Cir. 2010) (emphasis in original) (quoting *Anderson v. Davila*, 125 F.3d 148, 161 (3d Cir. 1997)).

When the alleged retaliation involves the statements or actions of officials, in this case police officers, the threshold for establishing such a claim is "particularly high," because the First Amendment generally does not protect politicians from the consequences of "hardball politics." *Id*. at 151. The fact that Plaintiff is an elected official is pertinent to the "person of ordinary firmness" analysis, because "politicians should have thick skin." *Nordstrom v. Town of Stettin*, 2017 U.S. Dist. LEXIS 73716, at *10-11 (W.D. Wis. May 15, 2017)(citing *Willson, supra*). "Put simply, more is fair in electoral politics than in other contexts." *Nordstrom, supra* (citing *Blair v. Bethel Sch. Dist*., 608 F.3d 540, 544 (9th Cir. 2010) (internal quotations omitted).  It is only when the alleged retaliation actually interferes with an elected official's ability to perform his or her elected duties that a retaliation claim may be actionable. *Werkheiser v. Pocono Township*, 780 F.3d 172 (3d Cir. 2015).

Throughout the Complaint Plaintiff asserts a theme that she was elected as a borough councilwoman and intended to right many wrongs.  Officer Rigatti and Chief Caporalli are included with all other defendants in a generalized claim in Count I that Plaintiff suffered retaliation for exercising her rights under the First Amendment.  The ultimate problem with regard to the officers is that there is no causal link between anything the officers did or failed to do that interfered with her role as a Borough Councilwoman.

At the outset, as set out above, neither officer is alleged to have engaged in any unconstitutional conduct. The alleged retaliatory conduct by Officer Rigatti is his threat that "I

have your son. He is eighteen. He's mine now[,]" (ECF 35 at ¶¶61-62); that Plaintiff is a "crazy drunk bitch" (*Id*. at ¶55); Plaintiff was not satisfied with the manner in which the officer conducted an investigation (*Id.* at ¶53-55) and the traffic stop of Mr. McClarnon (*Id.* at63-64).

The Chief's retaliatory conduct was advising Plaintiff when she requested copies of incident reports that the requested reports did not exist. (*Id*. at ¶¶63-65)[1]. Even accepting these allegations as true, they fail to establish conduct that could sufficiently deter a person of ordinary firmness from exercising their constitutional right to serve as a council woman. But more specifically, there is no articulated causal link and it is not reasonable to believe that such conduct, even if true, was in any linked to her role as a council woman.

As the Complaint is devoid of the required showing of any causal link between Plaintiff's Constitutionally protected conduct and the retaliation by these police officer Defendants for exercising that protected conduct, Plaintiff's First Amendment Retaliation claim (Count 1 of the Second Amended Complaint) is legally insufficient and should be dismissed with prejudice.

      **C.**    **Substantive Due Process claim of Abuse of Power/Official Oppression**

This cause of action is in reality a repeat of Plaintiff's First Amendment free speech claim found in Count I, cloaked as an abuse of power/official oppression claim. Moving Defendants herein adopt and incorporate Co-Defendant's well reasoned motion to dismiss argument as to Count III as though fully set forth. *See* ECF 44.

The circuit court set forth the analysis required of a Fourteenth Amendment substantive due process claim as follows:

---

[1] Even if incident reports of the events described existed Plaintiff would not be entitled to receive copies of the reports pursuant to the Criminal History Records Information Act which dictates that investigatory reports may only be shared with other law enforcement agencies. *See* 18 Pa.C.S.A. §9121(a)(b) and *In Re: Pittsburgh Citizen Police Review Board*, 36 A.3d 631 (Cmwlth. Ct. 2011)

> Section 1983 provides remedies for deprivations of rights established by the Constitution, including substantive due process under the Fourteenth Amendment. *Kaucher v. County of Bucks,* 455 F.3d 418, 423 (3d Cir.2006). "To state a claim, a plaintiff must demonstrate the defendant, acting under color of state law, deprived [plaintiff] of a right secured by the Constitution or the laws of the United States." *Kaucher,* 455 F.3d at 423 (citing *American Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 49–50, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999)). Accordingly, "[t]he first step in evaluating a section 1983 claim is to 'identify the exact contours of the underlying right said to have been violated' and to determine 'whether the plaintiff has alleged a deprivation of a constitutional right at all.' "*Nicini v. Morra,* 212 F.3d 798, 806 (3d Cir. 2000) (en banc) (quoting *County of Sacramento v. Lewis,* 523 U.S. 833, 841 n. 5, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998)). Furthermore, "the core of the concept [of due process is] protection against arbitrary action" and "only the most egregious official conduct can be said to be arbitrary in the constitutional sense." *Lewis,* 523 U.S. at 845–46, 118 S.Ct. 1708; *see also United Artists Theatre Circuit, Inc. v. Twp. of Warrington,* 316 F.3d 392, 399 (3d Cir.2003). The Supreme Court has consistently "spoken of the cognizable level of executive abuse of power as that which shocks the conscience." *Lewis,* 523 U.S. at 846, 118 S.Ct. 1708; *see also United Artists,* 316 F.3d at 399.
>
> To establish a substantive due process claim, a plaintiff must prove the particular interest at issue is protected by the substantive due process clause and the government's deprivation of that protected interest shocks the conscience. *United Artists,* 316 F.3d at 400–02. For example, we have held "ownership is a property interest worthy of substantive due process protection." *DeBlasio v. Zoning Bd. of Adjustment for Twp. of W. Amwell,* 53 F.3d 592, 600 (3d Cir.1995) *overruled on other grounds by United Artists,* 316 F.3d at 401. In other words, here, plaintiffs must have been deprived of a fundamental property interest under the Constitution. *See Gikas v. Washington Sch. Dist.,* 328 F.3d 731, 736 (3d Cir.2003)

*Marin v. McClincy*, 15 F.Supp.3d 602, 613-614 (W.D.Pa. 2014)(emphasis added).

The Circuit conveyed the same analysis; "The first step in evaluating a section 1983 claim is to 'identify the exact contours of the underlying right said to have been violated"' and to determine "whether the plaintiff has alleged a deprivation of a constitutional right at all.'" *Nicini*

*v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998)).

### 1. Abuse of Power as a cause of action

At Count III, Plaintiff titles her cause of action in part as "Abuse of Power/Official Oppression" and broadly claims that the "acts and omissions of [all] Defendants . . . describe abuses of the police power and official oppression pursuant and undertaken with the design and purpose of preventing McClarnon from exercising clearly established constitutional rights and to otherwise impair her peaceful enjoyment of life." ECF 35 at ¶107.

A threshold requirement for a Fourteenth Amendment Substantive due process claim is that there does not exist a more appropriate specific constitutional provision. *County of Sacramento v. Lewis*, 523 U.S. 833, 842-843 (1998). In the present case Plaintiff's First Amendment claim is repackaged as a Fourteenth Amendment due process claim. For this reason alone Plaintiff failed to set out a recognized, plausible substantive due process harm.

Furthermore, "abuse of power" is required of every substantive due process claim. Whether infringing on the right of familial integrity or property taking, the government must be shown to have abused its power in a manner that shocks the conscience. There is no stand alone "abuse of power" basis for a substantive due process claim.

This mere recitation of legal theories is wholly insufficient to state a cognizable cause of action. Again, beyond the problem that these are overly conclusory pronouncements which the Court may disregard under *Twombly*, "abuse of authority" in and of itself is not a cognizable Fourteenth Amendment substantive due process claim. The point is made clear by the Circuit Court as follows: "A Section 1983 claim premised upon "abuse of power" requires the plaintiff to show that: (1) **she was deprived of a fundamental interest subject to substantive due process**

**protection**, and (2) the government's action in effecting the deprivation "shocks the conscience." *Chainey v. Street*, 523 F.3d 200, 219 (3d Cir. 2008)(emphasis added). The only fundamental interest identified by Plaintiff is found in Count I, violation of her First Amendment right to free speech.

### 2. Conscience shocking

Furthermore, the conduct of the officers does not in and of itself identify any constitutional violation. Which leads to the second requirement that the officers' conduct "shocks the conscience". Whether conduct rises to such a level is dependent on the facts of the case and merely asserting an improper motive is insufficient, even where the motive is unrelated to the merits of the underlying decision. *United Artists Theatre Circuit, Inc. v. Twp. of Warrington*, 316 F.3d 392, 399 (3d Cir. 2003). In any case, what "shocks the conscience" is only "the most egregious official conduct." *Eichenlaub v. Twp. of Indiana*, 385 F.3d 274, 285 (3d Cir. 2004)(internal quotations omitted).

To preserve a Fourteenth Amendment substantive due process claim from dismissal there must be alleged sufficient facts to support a plausible claim that the defendant's conduct is "conscience shocking in a constitutional sense." *Lewis*, 523 U.S. at 846-48. In the Third Circuit, the "shocks the conscience" standard is applicable to all substantive due process claims. *Miller v. City of Philadelphia*, 174 F.3d 368, 374-75 (3d Cir. 1999). Whether conduct is conscience shocking is a question for the Court to decide. *Stein v. City of Philadelphia*, 994 F.Supp.2d 660, 662 (E.D. Pa. 2014)(citing *Benn v. universal Health Sys., Inc*., 371 F.3d 165, 174 (3d Cir. 2004)).

The operative Complaint alleges generally as to the two police officer defendants that Officer Rigatti allegedly uttered a personal insult regarding Plaintiff, he conducted a traffic stop of her husband and did not explain why, he made a veiled threat (which he did not carry out)

towards Plaintiff's son and Plaintiff's unhappiness with Officer Rigatti's investigation into her claim that she was threatened. Chief Caporalli advised Plaintiff when asked for copies of incident report, that none existed. Such conduct even if assumed as true, cannot be found as "conscience shocking and for these reasons Count III fails as a matter of law and should be dismissed with prejudice.

### 3.     Official Oppression

To the extent that Plaintiff purports to assert a substantive due process violation based upon "official oppression," courts have repeatedly held that no such claim is cognizable under 42 U.S.C. § 1983. *Tighe v. Purchase*, 2014 U.S. Dist. LEXIS 91424, at *9 (W.D. Pa. July 7, 2014) ("Official oppression' is a criminal offense under Pennsylvania law, the violation of which does provide a basis for bringing a claim under § 1983."); *McClure v. Comm'r Jeffrey T. Haste*, 2016 U.S. Dist. LEXIS 20031, at *1 n. 2 (M.D. Pa. Feb. 19, 2016); *Troutman v. Bartlett*, 2012 U.S. Dist. LEXIS 184018, at *1 n.3 (W.D. Pa. Dec. 4, 2012), report and recommendation adopted, 2013 U.S. Dist. LEXIS 2375, 2013 WL 85252 (W.D. Pa. Jan. 8, 2013); *Boatner v. Union Twp. Police Dep't*, 2014 U.S. Dist. LEXIS 143553, at *7-8 (W.D. Pa. Oct. 9, 2014); *Harris v. Taurasi*, 2019 U.S. Dist. LEXIS 39617, at *20 (M.D. Pa. Mar. 11, 2019).

Accordingly, Count III of the Second Amended Complaint should be dismissed with prejudice.

### D.     Count V (Failure to Enact/Implement Policies, Properly Supervise and Train against Chief Caporali only) fails for lack of specific pleadings.

In order to state a cause of action at Count V, Plaintiff need identify a specific formal governmental "policy" or an informal governmental "custom" that caused the alleged violation of her constitutional rights. *Berg v. County of Allegheny*, 219 F.3d 261, 275 (3d Cir. 2000). A "policy" is shown by demonstrating that an employee or agent acted pursuant to "an official

proclamation, policy or edict" issued by a municipal decision-maker with final authority to establish municipal policy as to the action in question. *Id*. (quoting *Kneipp v. Tedder*, 95 F.3d 1199, 1212 (3d Cir. 1996)); *Watson v. Abington Twp.*, 478 F.3d 144, 155 (3d Cir. 2007). A "custom" is shown by demonstrating that a practice of the governmental entity is so "well-settled and widespread" that it virtually constitutes law, regardless of whether it is specifically authorized. *Berg*, 219 F.3d at 276. In addition to identifying such a policy or custom, the plaintiff must demonstrate "a direct causal link between [the] municipal policy or custom and the alleged constitutional deprivation." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). This generally requires the plaintiff to establish that the municipal action was taken "with deliberate indifference to its known or obvious consequences." *Berg,* 219 F.3d at 275. "Deliberate indifference" is a stringent standard of fault, which is satisfied by neither simple nor heightened negligence. *Id*.; *Brown*, 520 U.S. at 410.

Here, it remains that Plaintiff's allegations against the Chief are scant and merely conclusory in nature. In fact, the Complaint is entirely devoid of any allegedly officially adopted policy or custom that was executed at the time of the incident that caused a constitutional violation. The failure to identify a policy or custom that caused the alleged constitutional violation is fatal. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978) ("[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."); *McTernan*, 564 F.3d at 658 ("To satisfy the pleading standard, [a plaintiff] must identify a custom or policy, and specify what exactly that custom or policy was.").

At its core, this claim targets the Chief for "failure" to "adopt policies, train its officials, employees and police officers in matters relating to citizens' fundamental constitutional rights, the proper ways of conducting governmental business and the law enforcement duties of its police officers, as well as its failure to supervise its officials, officers and police officers in these regards . . ." ECF 35, ¶ 111; see also, *Id.*, ¶ 86 (asserting that the actions of the individual Defendants as alleged in the Second Amended Complaint "represented the established practices, procedures and customs of Defendant Vandergrift"); *Id.*, ¶ 91 (alleging "upon information and/or belief" that the Chief "failed to adopt standard operating procedures for the operation of its local government and/or failed to implement any such procedures it may have had"). As set forth by Co-Defendants, such allegations simply recite the applicable legal principles and are thus insufficient to satisfy the standards governing any liability on the part of the Chief under Section 1983. As minimal as the allegations are, they do not even plead that the Chief was a decision-maker regarding the acts alleged. Accordingly, Count V should be dismissed with prejudice.

    **E.**  **Plaintiff pleads redundant official capacity claims against the Borough and Chief Caporali and Officer Rigatti.**

The United States Supreme Court has stated that "[t]here is no longer a need to bring official-capacity actions against local government officials, for under *Monell [v. Dept. of Social Services*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978)] . . . local government units can be sued directly for damages and injunctive declaratory relief." *Kentucky. v. Graham*, 473 U.S. 159, 167, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985) (*citing Tennessee v. Garner*, 471 U.S. 1, 105 S. Ct. 1694, 85 L. Ed. 2d 1 (1985)). Because local government agencies can be sued directly, claims brought against municipal employees or office holders in their official capacities are redundant of claims brought against the municipality, itself, and should be dismissed. *Schor v. North Braddock Borough*, 801 F.Supp.2d 369, 376 (W.D.Pa. 2011). Counts I, III and V are

brought against the Borough in addition to Moving Defendants.² Thus, all of the official capacity claims brought against Officer Rigatti and Chief Caporali at Counts I, III and V should be dismissed with prejudice.

### F. Moving Defendants are entitled to qualified immunity.

As evidenced above, there is no violation of a clearly established constitutional right and the Moving Defendants are entitled to qualified immunity on that basis. *See Sharrar v. Felsing*, 128 F.3d 810, 826 (3d Cir. 1997) (*citing Siegert v. Gilley*, 500 U.S. 226, 232 (1991)). Government officials performing discretionary functions are "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

The second inquiry of qualified immunity is whether a reasonable officer could have believed that his or her conduct was unlawful, in light of the clearly established law and the information in the officer's possession at the time that the conduct occurred. *Sharrar v. Felsing*, 128 F.3d at 826 (internal citations omitted). In this way, the qualified immunity standard "gives ample room for mistaken judgments' by protecting all but the plainly incompetent or those who knowingly violate the law." *Id.* "[T]he reasonableness of an official's belief that his or her conduct is lawful is a question of law for the court." *Sharrar*, 128 F.3d at 827 (citing to *Hunter*, 502 U.S. at 228).

The United States Supreme Court has recently been called upon to reiterate the longstanding principle that "clearly established law" should not be defined "at a high level of generality." *White v. Pauly*, No. 16-67, 2017 U.S. LEXIS 5, at *9 (Jan. 9, 2017)(citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 742, 131 S. Ct. 2074, 179 L. Ed. 2d 1149 (2011)). Further, clearly

---

² Count V is brought solely against the Borough and Chief Caporali.

established law must be "particularized" to the facts of the case. *Anderson v. Creighton*, 483 U. S. 635, 640, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987).  Qualified Immunity "is important to 'society as a whole,' and because as 'an immunity from suit,' qualified immunity 'is effectively lost if a case is erroneously permitted to go to trial.'"  *White*, No. 16-67, 2017 U.S. LEXIS 5, at *8-9 (Jan. 9, 2017) (citing *Pearson v. Callahan*, 555 U. S. 223, 231, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009)).

There is no case that Defendants could find where the mere absence of a police incident report could form the basis of a Constitutional violation.  Qualified immunity is appropriate as to Chief Caporalli then on both basis; he committed no constitutional violation and no case has held that, under the facts as alleged against the Chief, that he could have been on notice of unconstitutional conduct.

The same analysis applies to Officer Rigatti.  Referencing Plaintiff's drinking habits, conducting a traffic stop of plaintiff's husband and making a veiled threat (never carried out) against Plaintiff's son and not investigating an incident to Plaintiff's satisfaction have never been found to be violative of the First Amendment or Fourteenth Amendment substantive due process and so, Officer Rigatti is entitled to qualified immunity as he was not on notice that his conduct could violate plaintiff's rights under the First or Fourteenth Amendments.

Therefore, the Chief of Police and Officer Rigatti are entitled to dismissal on the basis of qualified immunity.

### G.    Futility of amendment

Plaintiff has now filed three Complaints.  No party has filed an answer.  It is anticipated that Plaintiff may opt to file yet a fourth complaint.  The Circuit Court addressed this scenario in the context of futility as follows:

> Rule 15(a) of the Federal Rules of Civil Procedure permits a party to amend a pleading "once as a matter of course at any time before a responsive pleading is served." A motion to dismiss for failure to state a claim must be made "before pleading if a further pleading is permitted." Fed.R.Civ.P. 12(b). Thus, in the typical case in which a defendant asserts the defense of failure to state a claim by motion, the plaintiff may amend the complaint once "as a matter of course" without leave of court. See 2 James Wm. Moore et al., Moore's Federal Practice § 12.34[5], at 12–76 (3d ed.1999) (quoting Fed.R.Civ.P. 15(a)). **After amending once or after an answer has been filed, the plaintiff may amend only with leave of court or the written consent of the opposing party**, but "leave shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). The Supreme Court has instructed that although "the grant or denial of an opportunity to amend is within the discretion of the District Court, ... outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely an abuse of that discretion and inconsistent with the spirit of the Federal Rules." *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962).
>
> "Among the grounds that could justify a denial of leave to amend are undue delay, bad faith, dilatory motive, prejudice, and futility." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir.1997) (*"Burlington"*); *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1413–14 (3d Cir.1993). "Futility" means that the complaint, as amended, would fail to state a claim upon which relief could be granted. *Burlington*, 114 F.3d at 1434. In assessing "futility," the District Court applies the same standard of legal sufficiency as applies under Rule 12(b)(6). Id.; 3 Moore's Federal Practice, supra § 15.15[3], at 15–47 to –48 (3d ed.2000). Accordingly, if a claim is vulnerable to dismissal under Rule 12(b)(6), but the plaintiff moves to amend, leave to amend generally must be granted **unless the amendment would not cure the deficiency**.

*Shane v. Fauver*, 213 F.3d 113, 115–16 (3d Cir. 2000)(emphasis added)

Should Plaintiff seek to amend her complaint in response to the motions to dismiss, it is requested that the Court first require Plaintiff to file a motion for leave to amend and include with her motion the proposed Third Amended Complaint in order to afford the court and the parties the opportunity review the proposed amended pleading. The basis for this request is that with the filing of the Second Amended Complaint that is legally and factually deficient, enough is enough.

Plaintiff's repeated amending of her Complaint in response to previous motions to dismiss is evidence of the insufficiency of her claims. The within requested relief is consistent with FRCP 15 and case law.

V.     **CONCLUSION**

For these reasons, Plaintiff has failed to set forth any cause of action that can survive Defendants Caporali and Rigatti's Motion to Dismiss. Plaintiff's Second Amended Complaint must therefore respectfully be dismissed as to these Defendants, as a matter of law, with prejudice.

Respectfully submitted,

**MARSHALL DENNEHEY
WARNER COLEMAN & GOGGIN**

BY: _____
PAUL D. KREPPS, ESQUIRE
PA ID #73038
pdkrepps@mdwcg.com
MORGAN M. J. RANDLE, ESQUIRE
PA ID #324470
mmrandle@mdwcg.com
Union Trust Building, Suite 700
501 Grant Street
Pittsburgh, PA  15219
412-803-1149 phone  / 412-803-1188 fax
**Counsel for Defendants, Joseph M. Caporali and Nathan Rigatti, only**

LEGAL/139064523.v1