**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

KAREN MCCLARNON,                          )
                                          )
            Plaintiff,                    )         Civil Action No. 20-779
                                          )         District Judge Robert J. Colville
            v.                            )         Magistrate Judge Maureen P. Kelly
                                          )
BOROUGH OF VANDERGRIFT, KATHY             )         Re: ECF Nos. 43, 59, and 67
CHVALA, JOHN USKURAITIS, THOMAS           )
HOLMES, LENNY COLLINI, JOSEPH M.          )
CAPORALI, NATHAN RIGATTI,                 )
WILLIAM MOORE, and TIMOTHY                )
TURNER,                                   )
                                          )
            Defendants.                   )

## REPORT AND RECOMMENDATION

## I.     RECOMMENDATION

Plaintiff Karen McClarnon ("McClarnon") is an elected member of the Vandergrift
Borough Council and brings this action pursuant to 42 U.S.C. § 1983 against the Borough of
Vandergrift ("Vandergrift" or "Borough"), four members of the Vandergrift Borough Council
("Borough Council"), Vandergrift's Chief of Police, two Vandergrift police officers, and a
Vandergrift resident.  Through her Second Amended Complaint, ECF No. 35, McClarnon alleges
that Defendants participated in a concerted retaliatory campaign "to stifle McClarnon's exercise
of fundamental rights, drive her from elected office and prevent her from publicizing government
inefficiencies and/or improprieties." ECF No. 35 ¶ 2. McClarnon alleges that Defendants' unlawful
conduct interfered with her ability to serve in her elected position and culminated with a physical
assault that resulted in broken ribs and a concussion.  Id. at 3.  McClarnon thus brings the following
claims against the identified Defendants:

1

| Count I | First Amendment – Retaliation | All Defendants |
|---|---|---|
| Count II | Fourteenth Amendment – Substantive Due Process (Reputation) | Defendant Collini |
| Count III | Fourteenth Amendment – Substantive Due Process (Abuse of Power/Official Oppression) | All Defendants |
| Count IV | Fourth Amendment – Excessive Force | Defendants Moore and Turner |
| Count V | Municipal and Supervisory Liability (*Monell*) | Defendants Vandergrift Borough and Caporali |
| Count VI | Common Law – Assault | Defendants Moore and Turner |
| Count VII | Common Law – Battery | Defendants Moore and Turner |
| Count VIII | Common Law – Defamation | Defendant Collini |
| Count IX | Common Law – Negligence | Defendant Moore |

ECF No. 35.

Defendants have filed motions to dismiss the Second Amended Complaint for failure to state a claim as follows: (1) Vandergrift Borough and Borough Council Members Chvala, Collini, Holmes, and Uskuraitis at ECF No. 43; (2) Vandergrift's Chief of Police Caporali and Vandergrift Police Officer Rigatti at ECF No. 59; and (3)  Vandergrift Police Officer Moore, at ECF No. 67.[1] Upon review of the Second Amended Complaint, the briefs in support and in opposition to the pending motions, it is respectfully recommended that the motions to dismiss be granted in part and denied in part.

---

[1] Defendant Timothy Turner is a Vandergrift resident who McClarnon alleges committed a physical assault against her, with the assistance of Defendant Moore.  Turner has not appeared in the case nor otherwise responded to the Complaint and on McClarnon's request, the Clerk of Court entered default on June 11, 2021.  ECF No. 49.

**II.     REPORT**

    **A.     FACTUAL AND PROCEDURAL BACKGROUND**

At this stage of the litigation, the well-pleaded facts set forth in the Second Amended Complaint are accepted as true. Odd v. Malone, 538 F.3d 202, 205 (3d Cir. 2008).

McClarnon was elected to the Vandergrift Borough Council in 2019 and served as a member of the pools and parks, building and grounds committees, and was chair of the tree committee.   ECF No. 35 ¶¶ 19, 22. McClarnon "sought to remedy what she perceived to be instances of government malfeasance, nepotism, corruption and/or other bad practices." Id. ¶ 24. Thus, she challenged the Borough's hiring Council President Chvala's daughter as well as permitting Chvala's son to open a business without payment of fees, required inspections, or participation in zoning processes, and exempting his business from parking restrictions. McClarnon also raised issues related to financial accountability and operation of the Borough pool, and the conduct of Borough meetings in violation of Pennsylvania's Sunshine Act.  Id. ¶¶ 25-30.

In response to McClarnon's complaints, Defendants commenced a "pervasive and orchestrated retaliatory campaign" to chill her speech and "prevent her from performing the duties of her office." Id. ¶ 32. The Borough Council Defendants failed to give McClarnon notice of or excluded her from committee decision-making meetings including a meeting in March 2020 related to hiring a pool manager and assistant manager, and held Borough Council meetings without providing her notice. When McClarnon learned of an Emergency Management meeting from an outside source, she attempted to attend, but Defendant Holmes directed that police officers have her removed.  The unidentified officers refused, but Defendant Chvala informed McClarnon that "she would be 'punished' and 'pay a price' for not leaving." Id. ¶¶ 38-41.

During Borough Council meetings, Defendant Chvala responded to McClarnon's attempts to raise nepotism issues by refusing to let McClarnon speak and ordering meetings adjourned. Id. ¶ 43. Defendant Holmes countered McClarnon's police-related inquiries by calling her "despicable," and announcing he would never speak to her again. Following that exchange on November 2, 2020, "a number of police officers stopped talking to McClarnon." Id. ¶¶ 45-46.

McClarnon alleges that Defendants' retaliation escalated after she filed a state ethics complaint against Defendant Chvala for nepotism and again after she initiated this federal litigation. During Borough Council meetings, Defendant Councilmembers refused to address issues raised by McClarnon and attacked her character.  Defendant Collini spread a rumor that McClarnon had been terminated from her position as a principal of a private school due to theft. "He has also stated publicly that McClarnon had previously been hospitalized due to a nervous breakdown." Id. ¶¶ 47-51.

Defendants' retaliatory measures included threats of harm to her and to her family, some with the participation of the Vandergrift Police Department.  Defendant Uskuraitis threatened to post McClarnon's home address and phone number on Facebook; Defendant Collini shouted "I'll kill you" outside of McClarnon's home; Defendant Police Officer Rigatti threatened her son, stating "I have your son. He is eighteen. *He's mine now.*" Id. ¶¶ 52-61 (italics in original). While on duty, Defendant Rigatti followed McClarnon's husband as he drove home and executed an extended traffic stop without cause and without explaining the reason for the stop.  Id. ¶¶ 63-65. Defendant Chief of Police Caporali was informed of the Collini incident and of a witness report that Collini's conduct was unprovoked, but Caporali denied the existence of a police report reflecting the witness statement and no charges were filed.  Id. ¶¶ 56-57.

4

McClarnon asserts that the Borough Council Defendants' hostility was well known to Moore, a Vandergrift Police Officer, and Turner, a Vandergrift resident who performed repair work for the police department, who acted to advance the retaliation against McClarnon and to dissuade her from exercising her first amendment rights to publicly discuss issues of government malfeasance and favoritism.  Id. ¶ 84. On January 17, 2021, Moore and Turner conspired to physically assault McClarnon.  McClarnon alleges that Moore invited her to his home to speak with an acquaintance about the acquaintance's child with special needs.  Moore arranged for Defendant Turner to pick up McClarnon and drive her to his house.  When McClarnon arrived, there was no discussion regarding special needs issues and McClarnon stated she wanted to go home. Turner again drove McClarnon, but he did not return to her home. Instead, Turner "brutally beat McClarnon, rendering her unconscious, breaking several of her ribs," and causing other injuries. Id. ¶¶ 66-74. Turner then returned to Moore's home with McClarnon still in the car. Moore did not summon medical assistance and advised McClarnon not to call the Vandergrift police.  Once home, McClarnon's neighbor photographed her injuries. The neighbor is married to another Vandergrift police officer, who directed his wife to delete the photos and deny that she had seen McClarnon. Turner, but not Moore, was criminally charged by the Pennsylvania State Police for the assault. Id. ¶¶ 75-82.

McClarnon contends that each of the Borough Council Defendants and Police Chief Caporali represented the practices and procedures of  the  Borough and acted in furtherance of municipal policy. In addition, she alleges that the Borough and Caporali failed to train and supervise elected officials and employees of the police department as to the rights of elected officials and the obligations of the police department to protect those rights.  Id. ¶¶ 83-93.

As a result of the injuries sustained because of the conduct of each of the Defendants, McClarnon seeks declaratory relief and the award of compensatory and punitive damages.

**B.      STANDARD OF REVIEW**

The United States Supreme Court has held that a complaint is properly dismissed under Fed. R. Civ. P. 12(b)(6) where it does not allege "enough facts to state a claim to relief that is plausible on its face," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007), or where the factual content does not allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  In assessing the sufficiency of a complaint, the Court must accept as true all material allegations in the complaint and all reasonable factual inferences must be viewed in the light most favorable to the plaintiff.  Odd v. Malone, 538 F.3d 202, 205 (3d Cir. 2008). The Court, however, need not accept bald assertions or inferences drawn by the plaintiff if they are unsupported by the facts set forth in the complaint. See California Pub. Employees' Ret. Sys. v. Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) (citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997)). Nor must the Court accept legal conclusions set forth as factual allegations.  Twombly, 550 U.S. at 555.  Rather, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id. (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)); see also Phillips v. Cnty of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (finding that, under Twombly, "labels and conclusions, and a formulaic recitation of the elements of a cause of action" do not suffice.  The complaint must allege facts that are sufficient "to raise a reasonable expectation that discovery will reveal evidence of 'the necessary element[s]' [of his claim].") Id., 515 F.3d at 234.  In sum, a motion to dismiss should be granted if a party does not allege facts which could, if established at trial, entitle him to relief.  *See* Fowler v. UPMC Shadyside, 578 F.3d 203, 211 (3d Cir. 2009).

C.    DISCUSSION

1.    Section 1983 claims

McClarnon brings her First, Fourth, and Fourteenth Amendment claims pursuant to 42 U.S.C. § 1983. To maintain these claims, McClarnon must establish that her rights were violated and that the alleged deprivation was committed by a person acting under color of state law or, in circumstances alleged here, by the municipal employer or supervisor of such a person. West v. Atkins, 487 U.S. 42, 48 (1988); Monell v. Dep't of Social Servs of City of New York, 436 U.S. 658, 691-94 (1978).

Defendants move to dismiss McClarnon's Section 1983 claims on several grounds, as follows: (1) McClarnon seeks to improperly subject Defendants' political motives to judicial inquiry; (2) McClarnon fails to allege facts demonstrating that each Defendant was personally involved in the violation of her constitutional rights; (3) McClarnon fails to allege facts sufficient to establish that her constitutional rights were violated; (4) Defendants are entitled to qualified immunity; and, (5) as to Defendant Moore, McClarnon fails to allege facts establishing that he acted under color of state law.

a.    First Amendment Retaliation Claims

i.    Judicial Inquiry and Sufficiency of Allegations

In Count I, McClarnon alleges a First Amendment retaliation claim against all named Defendants for their retaliatory misconduct in response to her challenge of Borough policies and practices.  ECF No. 35 ¶¶ 95-98.  Before reaching the sufficiency of her First Amendment claim, Vandergrift and the Borough Council Defendants contend that McClarnon's First Amendment claims should be dismissed because judicial oversight into the Defendants' political motives for their conduct implicates separation of powers concerns.  ECF No. 44 at 5-6 (citing Zimmerlink v.

Zapotosky, 539 F. App'x 45, 50 (3d Cir. 2013) (nonprecedential); Tenney v. Brandhove, 341 U.S. 367, 376, 378 (1951); Camacho v. Brandon, 317 F.3d 153 (2d Cir. 2003); Shields v. Charter Twp. of Comstock, 617 F. Supp. 2d 606, 615-616 (W.D. Mich. 2009)). In Tenney, the United States Supreme Court held that a court is not the place to examine controversies "in a field where legislators traditionally have power to act." 341 U.S. at 378. The Supreme Court therefore affirmed the dismissal of First Amendment retaliation claims challenging the proprietary of investigations and contempt proceedings initiated by a legislative body against the plaintiff to determine the veracity of his published accusations of illegal conduct. The Court found that such proceedings are plainly within the sphere of legitimate legislative activities and correction, if any, is properly left to the voters. The Court recognized, however, that a claim may be sustained when a legislator has exceeded his or her legislative role or violated the rights of a private individual. Id. at 377; see also Fowler-Nash v. Democratic Caucus of Pa. House of Representatives, 469 F.3d 328, 330–31 (3d Cir. 2006) ("The Tenney Court aptly summed up the purposes of the Speech and Debate Clause, stating that legislators must be 'immune from deterrents to the uninhibited discharge of their legislative duty, not for their private indulgence but for the public good.' 341 U.S. at 377"). Thus, judicial inquiry is not barred when a claim is alleged for the violation of the plaintiff's civil rights arising from conduct that exceeds the bounds of legislative privilege, and the litigation is not a mere "vehicle for the resolution of quotidian disputes among elected officials." Zimmerlink, 539 F. App'x at 50.

The United States Court of Appeals for the Third Circuit implicitly acknowledged this distinction when it found an elected official's First Amendment claim cognizable in an action brought against a city council president for the alleged violation of the official's rights to free speech. Monteiro v. City of Elizabeth, 436 F.3d 397 (3d Cir. 2006). There, the evidence at trial

established that the council president failed to comply with guiding rules and established council procedures when she ejected the plaintiff, an elected representative, from a public meeting and ordered police officers to arrest him when he refused to leave. Id. at 401. On appeal, the Third Circuit affirmed the denial of judgment notwithstanding the verdict because the evidence was sufficient to permit a jury to conclude that the council president's conduct was motivated by a desire to suppress speech based on the elected official's viewpoint and, therefore, that she violated the plaintiff's First Amendment rights. Id. at 405-06.

In this case, because McClarnon adequately states a First Amendment claim for conduct not fairly within the bounds of legitimate legislative privilege, dismissal based on improper judicial oversight is not warranted.

Turning to the sufficiency of McClarnon's First Amendment retaliation claim, she must allege that she engaged in "(1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising [her] constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." Thomas v. Independence Twp., 463 F.3d 285, 296 (3d Cir. 2006) *abrogated on other grounds, as recognized in* Zion v. Nassan, 727 F. Supp. 2d 388, 404 (W.D. Pa. 2010), *aff'd*, 556 F. App'x. 103 (3d Cir. 2014). "[F]or Defendants' alleged retaliatory conduct to be actionable, that conduct must have had more than a *de minimus* impact" on McClarnon's First Amendment rights.  Curley v. Monmouth Cnty Bd. of Chosen Freeholders, 816 F. App'x 670, 674 (3d Cir. 2020) (citing McKee v. Hart, 436 F.3d 165, 170 (3d Cir. 2006) and citing, Brennan v. Norton, 350 F.3d 399, 419 (3d Cir. 2003)). "In order to establish the required causal connection, a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link."

Rink v. Ne. Educ. Intermediate Unit 19, 717 F. App'x 126, 133 (3d Cir. 2017) (citing Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007)).

The parties do not contest whether McClarnon engaged in constitutionally protected activity when she publicly voiced her concerns regarding nepotism and municipal management issues.  ECF No. 44 at 6-10; ECF No. 60 at 7-9; ECF No. 68 at 8-9.  Instead, the Defendants collectively challenge whether McClarnon alleges facts that show personal involvement in the violation of her First Amendment rights and whether the alleged retaliatory conduct would deter a "person of ordinary firmness" from exercising her constitutional rights. At this early stage of the litigation, McClarnon's allegations plausibly state a claim for relief.

 In Bond v. Floyd, 385 U.S. 116 (1966), the Supreme Court observed, "[t]he manifest function of the First Amendment in a representative government requires that legislators be given the widest latitude to express their views on issues of policy. The central commitment of the First Amendment, … is that 'debate on public issues be uninhibited, robust, and wide-open.'" Id. at 135-36 (internal citation omitted). "Legislators have an obligation to take positions on controversial political questions so that their constituents can be fully informed by them, and be better able to assess their qualifications for office; also so they may be represented in governmental debates by the person they have elected to represent them." Id. at 136 - 37. Thus, retaliation that works to exclude a duly elected official from office based on a viewpoint violates the First Amendment, as does conduct that otherwise interferes with the official's ability to adequately perform elected duties.  Id.; see also Monteiro, 436 F.3d at 404; Werkheiser v. Pocono Twp. Bd. of Supervisors, 780 F.3d 172, 181 (3d Cir. 2015).

Whether conduct rises to interference with official duties turns on its severity, for "[i]t would trivialize the First Amendment to hold that harassment for exercising the right of free speech

was always actionable no matter how unlikely to deter a person of ordinary firmness from that exercise." <u>Zimmerlink</u>, 539 F. App'x at 50 (quoting <u>Suppan v. Dadonna</u>, 203 F.3d 228, 235 (3d Cir. 2000)). Name calling and an isolated threat of harm "do not amount to punitive conduct that would 'deter a person of ordinary firmness' from exercising free speech rights even when examined in the light most favorable to [plaintiff]." <u>Willson v. Yerke</u>, 604 F. App'x 149, 151 (3d Cir. 2015).

Even considering McClarnon's voluntary participation in "the everyday squabbles of hardball politics," <u>Werkheiser</u>, 780 F.3d at 181, her allegations present an "entire campaign of harassment" which as to much "though trivial in detail may have been substantial in gross" and "reached the threshold of actionability under section 1983." <u>Suppan</u>, 203 F.3d at 235. The litany of alleged misconduct resulting from her challenge to municipal management includes actions by each of the Defendant Borough Councilmembers and Borough employees to interfere with McClarnon's ability to carry out her elected duties, i.e., being barred from participating in the hiring process for municipal employees, decision-making meetings held in secret, meetings adjourned to prevent her participation, and being told to leave a meeting under threat of arrest. Defendants also allegedly inflicted or supported harm on her personally and on her family members, including an unexplained and extended police stop of her husband, threat of police interference with her son, and threats of personal harm culminating in a coordinated assault and battery by a Borough Police Department employee and alleged independent contractor.

Accepting the factual allegations as true – as required at this stage – and viewed in the light most favorable to McClarnon as the non-moving party, she plausibly alleges that the Defendants' actions, independently and under color of state law, would deter an elected official of ordinary firmness from speaking. McClarnon's factual allegations are enough to advance her First

Amendment retaliation claims as to each Defendant's active participation in the retaliatory conduct "across the line from conceivable to plausible." Twombly, at 570.   Thus, it is recommended that the Court deny the Defendants' Motions to Dismiss challenging the adequacy of the factual allegations of her First Amendment retaliation claim and the personal involvement of each of the Defendants.

### ii.   Qualified Immunity

Vandergrift, the Borough Council Defendants, and the Police Department Defendants contend that even if McClarnon sufficiently alleges a First Amendment claim, dismissal is warranted based on qualified immunity. "The doctrine of qualified immunity protects government officials from civil damage suits for official conduct that does not violate clearly established law of which a reasonable person would have known." Monteiro, 436 F.3d at 404 (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).   "Qualified immunity 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" Id. (citations omitted).

In reviewing a claim of qualified immunity, the Court must determine "(1) whether the facts alleged by the plaintiff show the violation of a constitutional right; and (2) whether the right at issue was clearly established at the time of the alleged misconduct." James v. City of Wilkes-Barre, 700 F.3d 675, 679 (3d. Cir. 2012) (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)). "'[Q]ualified immunity will be upheld on a 12(b)(6) motion only when the immunity is established on the face of the complaint.'" Thomas, 463 F.3d at 291 (quoting Leveto v. Lapina, 258 F.3d 156, 161 (3d Cir. 2001)).

Here, the Court has determined that the Second Amended Complaint sufficiently alleges that each Defendant violated McClarnon's First Amendment rights in retaliating against her and

thus turns to the second prong of a qualified immunity analysis: whether the rights allegedly violated were clearly established.

The Borough Council Defendants assert that pursuant to the holding in Garcetti v. Ceballos, 547 U.S. 410 (2006), McClarnon does not have a clearly established right against retaliation for speech made within the scope of her official duties.  ECF No. 44 at 12.  In Garcetti, the United States Supreme Court held that speech made pursuant to a *public employee's* "official duties" is not protected by the First Amendment because *government employers* "need a significant degree of control over their employees' words and actions; without it, there would be little chance for the efficient provision of public services." Id., 547 at 418-19.  Defendants' arguments to the contrary, this case does not involve an employment relationship with its inherent supervisory concerns, and thus falls squarely within longstanding precedent that retaliatory conduct that impedes an elected official from casting a vote or speaking on matters of public concern is a violation of the First Amendment. See Bond, 385 U.S. at 135; Montiero, 436 F.3d at 404 ("It is clearly established that when a public official excludes a[n] elected representative or a citizen from a public meeting, she must conform her conduct to the requirements of the First Amendment."). At this stage of the litigation, whether qualified immunity bars McClarnon's claims turns on the sufficiency of allegations that she was precluded from fulfilling the duties of her position, and stands in contrast with instances where the alleged misconduct did not. See e.g., Werkheiser, 780 F.3d at 183 (qualified immunity bars claim where alleged retaliatory conduct is limited to declining to reappoint elected official to non-elected position and defendants did not prevent him from performing obligations of elected office); Zimmerlink, 539 F. App'x at 50 (at summary judgment stage, qualified immunity found to apply where evidence of harm limited to excluding elected official from private non-decision making meetings and mischaracterizing public comments; this

conduct did not prevent plaintiff from speaking at public meetings or otherwise interfere with performing official duties.).

Based upon the inferences properly drawn from the Second Amended Complaint, Defendants' reliance on <u>Werkheiser</u>, <u>Zimmerlink</u>, and <u>Croft</u> is inapt. McClarnon alleges that the Borough Council Defendants, in a coordinated retaliatory response to her complaints, interfered with her rights, privileges, and responsibilities as an elected official, and hindered her ability to fulfill her elected duties. As alleged, Defendants adjourned meetings to prevent her from speaking, excluded her from committee decision-making meetings to preclude her participation and vote, threatened her arrest to remove her from a council meeting, and encouraged police misconduct that culminated in an unauthorized police-stop of her husband, and an orchestrated assault and battery. These allegations – viewed in the light most favorable to McClarnon at this early stage of the litigation – plausibly state violations of McClarnon's clearly established First Amendment rights under <u>Bond</u>, <u>Monteiro</u>, and <u>Landis v. Bishop</u>, 1:13-cv-1119, 2014 WL 12775672, at *8 (M.D. Pa. Sept 23, 2014) (physical intimidation and threats of future harm sufficient to state a First Amendment violation). <u>See also</u> <u>Thomas</u> (allegations that defendant township board of supervisors engaged in a campaign of harassment and intimidation in retaliation against plaintiffs for exercising their First Amendment rights stated claim for violation of clearly established rights). Accordingly, the Vandergrift Borough and Borough Council Defendants' motion to dismiss based on qualified immunity is properly denied.

The Police Department Defendants' assertion of qualified immunity also fails at this stage of the litigation. "'Police officers, embodying the authority of the state, are liable under § 1983 when they violate someone's constitutional rights, unless they are protected by qualified immunity.'" <u>Jefferson v. Lias</u>, No. 20-2526, __ F.4th ___, 2021 WL 5934677, at *4 (3d Cir. Dec.

16, 2021) (quoting <u>Peroza-Benitez v. Smith</u>, 994 F.3d 157, 165 (3d Cir. 2021) and <u>Santini v. Fuentes</u>, 795 F.3d 410, 416-17 (3d Cir. 2015)). McClarnon alleges that the Police Department Defendants acted in concert and in furtherance of the Borough Council Defendants' retaliatory campaign in violation of her First Amendment rights. Among other actions, Moore is alleged to have coordinated and participated in a violent assault; Rigatti is alleged to have threatened McClarnon's son and participated in an extended and unwarranted stop of her husband; and Police Chief Caporoli acquiesced to the retaliatory campaign by failing to intervene on her behalf despite his awareness of his subordinates' participation in retaliatory conduct. Thus, the Court must determine whether the Police Department Defendants' alleged participation in the coordinated violation of a citizen's First Amendment rights violates clearly established rights. Because it does, qualified immunity does not bar McClarnon's claim at this early stage of the litigation.

In <u>Cole v. Encapera</u>, 758 F. App'x 252 (3d Cir. 2018)(nonprecedential), a three-judge panel of the Third Circuit determined that the right to be free from police retaliation arising from complaints regarding police conduct was well established and thus qualified immunity would not bar the plaintiff's First Amendment claims. <u>Id.</u> at 257. <u>Cole</u>, in turn, cites to <u>Thomas</u>, 463 F.3d at 296, and both decisions taken together stand for the proposition that it is clearly established that police stops without cause, threats of harm and intimidation by government officials and employees, and engaging in harassment to retaliate against an individual for her speech violate the First Amendment. <u>See also</u>, <u>Noonan v. Kane</u>, 305 F. Supp. 3d 587, 602 (E.D. Pa. 2018); <u>Konopka v. Borough of Wyoming</u>, 383 F. Supp. 2d 666, 683–84 (M.D. Pa. 2005) ("a reasonable official would certainly recognize the constitutional infirmity of engaging in a pattern of harassment as retaliation for filing a lawsuit"). Because McClarnon alleges facts that permit an inference that police misconduct occurred in retaliation for McClarnon's exercise of her First Amendment rights

and in violation of clearly established rights, it is recommended that the Court deny the Motions to Dismiss on the basis of qualified immunity.

**b.     Substantive Due Process Claim (Reputation)**

As to Count II, the Borough Council Defendants assert that they are entitled to dismissal of McClarnon's substantive due process claim against Councilmember Collini for injury to her reputation for three reasons: (1) McClarnon does not identify to whom the statements were made, (2) she fails to allege facts supporting the required "stigma plus", and (3) qualified immunity bars her claim because the law is unsettled when the reputational injury does not result in the termination of public employment.   ECF No. 44 at 15-16.   None of these arguments support dismissal.

The Due Process Clause of the Fourteenth Amendment provides that a state shall not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The substantive component of due process "protects individual liberty against 'certain government actions regardless of the fairness of the procedures used to implement them,'" Collins v. City of Harker Heights, 503 U.S. 115, 125 (1992) (quoting Daniels v. Williams, 474 U.S. 327, 331(1986)), and applies to "conduct intended to injure in some way unjustifiable by any government interest." Cnty. of Sacramento v. Lewis, 523 U.S. 833, 849 (1998).   However, "the due process clause is not a surrogate for local tort law or state statutory and administrative remedies." Morrow v. Balaski, 719 F.3d 160, 176 (3d Cir. 2013).   Whether a tort claim for defamation rises to a cognizable violation therefore requires more than injury to reputation.

The Third Circuit has explained that "to make out a due process claim for deprivation of a liberty interest in reputation, a plaintiff must show a stigma to [her] reputation *plus* deprivation of some additional right or interest." Hill v. Borough of Kutzdown, 455 F.3d 225, 236 (3d Cir. 2006)

(emphasis in original) (citing <u>Paul v. Davis</u>, 424 U.S. 693, 701 (1976)).  <u>See also</u> <u>Clark v. Twp. of Falls</u>, 890 F.2d 611, 619 (3d Cir. 1989) (citing <u>Paul</u>, 424 U.S. at 701-12, "defamation is actionable under 42 U.S.C. § 1983 only if it occurs in the course of or is accompanied by a change or extinguishment of a right or status guaranteed by the state law of the Constitution.").

Thus, absent allegations of the loss of employment or specific facts regarding lost job opportunities, rescinded job offers, or a change  or other termination of an established right, a claim for the deprivation of a liberty interest is not stated. <u>Shutt v. Miller</u>, 724 F. App'x 112, 115 (3d Cir. 2018) (citing <u>Hill</u>, 455 F.3d at 236 (public employment context)). <u>See also</u> <u>Strum v. Clark</u>, 835 F.2d 1009, 1013 (3d Cir. 1987) (allegations that government officials depicted the plaintiff as disruptive and unprofessional were not sufficient to state a due process claim where the identified deprivation was limited to financial harm resulting from the loss of potential clients.).

McClarnon does not allege that Collini's publication of defamatory statements resulted in the termination of employment or an existing offer.  To the extent she alleges that she has suffered "lost business income and opportunities," ECF No. 35 ¶ 89, her generalized allegations are insufficient to elevate her defamation tort claim to a constitutional violation. <u>Mun. Revenue Servs., Inc. v. McBlain</u>, 347 F. App'x 817, 826 (3d Cir. 2009) ("defamatory statements that curtail a plaintiff's business opportunities [do not] suffice to support a substantive due process claim") (citations omitted)). That said, in <u>Merkle v. Upper Dublin Sch. Dist.</u>, 211 F.3d 782 (3d Cir. 2000), the Third Circuit acknowledged that a claim for defamation may be actionable as a substantive due process violation if it arose in the course of the defendant's violation of another constitutional right.  Merkle, a schoolteacher, alleged that her district superintendent instituted a malicious prosecution against her and infringed on her good name by publicly and falsely accusing her of crimes in retaliation for her outspokenness on the issue of multicultural awareness.  <u>Id.</u> at 788. The

district court granted summary judgment in favor of defendants on each of her claims. The Third

Circuit reversed and found that the plaintiff presented a cognizable claim for jury consideration.

> This court has warned against "equat[ing] a state defamation claim with a cause of action under section 1983 predicated on the Fourteenth Amendment." See Kelly v. Borough of Sayreville, 107 F.3d 1073, 1078 (3d Cir. 1997). Thus, the Fourteenth Amendment does not protect injury to reputation alone, Paul v. Davis, 424 U.S. 693, 701–10, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976); Clark v. Township of Falls, 890 F.2d 611, 619 (3d Cir. 1989). However, Merkle may show that her Fourteenth Amendment rights were violated if the harm to her reputation occurred while she was being deprived of another constitutional right. See Ersek v. Township of Springfield, 102 F.3d 79, 83 n. 5 (3d Cir. 1996); Robb v. City of Philadelphia, 733 F.2d 286, 294 (3d Cir. 1984).

> The district court held that, because it had dismissed all of Merkle's other constitutional claims, she could not show that any false statements by the District were made in the course of another constitutional violation. However, because we believe that there is a question of fact for a jury as to whether Brown was motivated by Merkle's exercise of her First Amendment right of speech to initiate a baseless prosecution, she may be able to adduce evidence of an injury to her reputation while in the exercise of a constitutional right.

Id. at 797. Thus, the defendant superintendent was not entitled to qualified immunity because, in

pursing the plaintiff's arrest and causing injury to her reputation because of her speech, he violated

clearly established constitutional rights of which a reasonable person would have known.

Here, McClarnon alleges a plausible claim that Defendant Collini violated her First

Amendment rights by participating in a retaliatory campaign against her based on her attempts to

air municipal management concerns, and further alleges that the defamatory remarks were made

in connection with that violation. At this early stage of the litigation, McClarnon therefore states a

plausible substantive due process claim for injury to her reputation. Moreover, because her First

Amendment right against retaliation was clearly established at the time of the alleged violation,

qualified immunity does not bar McClarnon's Fourteenth Amendment claim against Defendant Collini, and the motion to dismiss is properly denied.[2]

### c.   Substantive Due Process (Abuse of Power/Official Oppression)

Vandergrift Borough, the Borough Council Defendants, the Police Department Defendants, and Police Officer Moore move to dismiss McClarnon's Fourteenth Amendment substantive due process claim for alleged abuse of power and official oppression, asserted in Count III. Defendants contend that to the extent the law recognizes such a claim, it is limited to arbitrary, egregious official conduct that is outrageous and conscience shocking – conduct they say that is not at issue or alleged here. ECF No. 44 at 16-17; ECF No. 60 at 9-13; ECF No. 68 at 7-8. Moreover, they assert that the law does not recognize a private right of action for "official oppression." Id. McClarnon does not address and therefore appears to concede the absence of a cause of action for official oppression, but argues that based upon the coordinated physical assault in furtherance of Defendants' retaliatory campaign against her, she has adequately stated a substantive due process claim. ECF No. 75 at 20-22.

"The touchstone of due process is protection of the individual against arbitrary action of government." Wolff v. McDonnell, 418 U.S. 539, 558 (1974). "To be arbitrary in the constitutional sense, an executive abuse of power must 'shock the conscience.'" Betz v. Satteson, 259 F. Supp. 3d 132, 176 (M.D. Pa. 2017), aff'd, 715 F. App'x 213 (3d Cir. 2017) (quoting T.W. ex rel. Wilson v. Sch. Bd. of Seminole Cnty., Fla., 610 F.3d 588, 598 (11th Cir. 2010) and County of Sacramento v. Lewis, 523 U.S. at 848). "It should not be surprising that the constitutional concept of conscience

---

[2] The Court finds unpersuasive Defendants' motion to dismiss McClarnon's Fourteenth Amendment stigma-plus claim based on her failure to identify by name the individuals to whom Cilloni made his allegedly defamatory statements. At this early stage of the litigation, a plaintiff need only "plead that the allegedly stigmatizing information was 'published' or otherwise disseminated … to the public." Chabal v. Reagan, 841 F.2d 1216, 1223 (3d Cir. 1983) (quoting Bishop v. Wood, 426 U.S. 341, 348 (1976)). McClarnon plainly alleges that Collini made the false and defamatory statements "to third parties." ECF No. 35 ¶ 101. Her allegations may be tested in this regard after discovery but are sufficient to state a claim to relief that is plausible on its face.

shocking duplicates no traditional category of common-law fault, but rather points clearly away from liability, or clearly toward it, only at the ends of the tort law's spectrum of culpability. Thus, we have made it clear that the due process guarantee does not entail a body of constitutional law imposing liability whenever someone cloaked with state authority causes harm." Id. (quoting Lewis, at 848).  "It is, on the contrary, behavior at the other end of the culpability spectrum that would most probably support a substantive due process claim; conduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." Lewis, at 849.

McClarnon confirms that her claims of abuse of power claim arises out of her allegations of unlawful retaliation culminating in a coordinated violent physical assault in furtherance of the interests of the Borough Council Defendants, and aided by employees of the Vandergrift Police Department.  ECF No. 75 at 20-22 (citing ECF No. 35 ¶¶ 84, 66-78). At this early stage of the litigation, McClarnon's allegations raise to the conscience-shocking level to support a substantive due process claim against each of the named Defendants, and dismissal on this basis is not warranted. However, the Court should grant each Defendants' motion to dismiss McClarnon's purported claim for official oppression. Johnson v. Koehler, No. 3:14-CV-1490, 2015 WL 1470948, at *14 (M.D. Pa. Mar. 31, 2015) ("Official Oppression" is a criminal offense under Pennsylvania law, "the violation of which does not provide a basis for bringing a claim under § 1983"); Troutman v. Bartlett, No.11–315, 2012 WL 6808559, at *1 n. 3 (W.D. Pa.  Dec.4, 2012), *report and recommendation adopted*, 2013 WL 85252 (W.D. Pa. Jan.8, 2013).

### d.  Monell claims

In Count V, McClarnon alleges that the Borough and Police Chief Caporali promulgated policy in support of retaliation and otherwise failed to adopt policies or properly train and supervise

officials and employees to guard against the violation of her constitutional rights. Defendants move to dismiss these municipal and supervisory claims, as well as McClarnon's claims against the Borough Council Defendants and Police Chief Caporali in their official capacities, arguing that (1) official capacity claims are duplicative of her claims against Vandergrift Borough and should be dismissed as redundant; (2) a claim against the municipality cannot be sustained in the absence of a viable Section 1983 claim against individual Defendants; (3) McClarnon fails to identify a "formal governmental 'policy' or an informal governmental 'custom' that caused the alleged violation of her rights upon which municipal liability may be sustained; and (4) McClarnon relies solely upon conclusory allegations of law unsupported by factual allegations sufficient to state a municipal liability claim.

As previously discussed, the Court concludes that McClarnon sufficiently states claims for the violation of her rights under the First and Fourteenth Amendments against the individual municipal defendants; thus dismissal due to the absence of a viable § 1983 claim is not warranted. The Court resolves each of the remaining contentions as follows.

### i.    Official Capacity Claims

McClarnon has sued each of the named Borough Defendants in his or her individual and official capacities. "Official-capacity suits ... 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") Kentucky v. Graham, 473 U.S. 159, 165-66 (1985) (quoting Monell, 436 U.S. at 690, *n.*55). "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." Id. Thus, McClarnon's official capacity claims against the named Borough Defendants are construed as claims against Vandergrift Borough. Because Vandergrift Borough is a defendant in this action, these claims are duplicative and may be dismissed on that basis. Gregory v. Chehi, 843 F.2d 111, 120 (3d Cir.1988)

("the claims here, insofar as they are against the defendant officials in their official capacities, are only a duplication of the counts asserted against the [entity] itself."); Jankowski v. Lellock, No. 13–194, 2013 WL 5945782, at *9 n. 6 (W.D. Pa. Nov. 6, 2013) ("it is a well-established practice in [the Third Circuit] to dismiss redundant § 1983 claims asserted against public officers in their official capacities where a claim has also been made against the public entity that employs them."). To simplify litigation of the claims against Vandergrift Borough, it is recommended that the Court dismiss the official capacity claims against the individual Borough Council Defendants and Police Chief Caparoli.

### ii.   Identification of Policy and Custom and Sufficiency of Allegations to support Monell claims

To plead a claim for municipal liability under § 1983, a plaintiff must allege that the municipality's policy or custom caused the violation of her constitutional rights. See Monell, 436 U.S. at 694. "To satisfy the pleading standard, [the plaintiff] must ... specify what exactly that custom or policy was." McTernan v. City of York, PA, 564 F.3d 636, 658 (3d Cir. 2009). "'Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict.'" Estate of Roman v. City of Newark, 914 F.3d 789, 798 (3d Cir. 2019) (quoting Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir. 1990)). "'Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law.'" Id. (quoting Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990)). To establish causation, the plaintiff must allege a "plausible nexus" or that an "affirmative link" exists between the violation and the municipality's custom or practice. Bielevicz, 915 F.2d at 850. "Causation exists where the connection between the policy and injury

is so strong that it would be a plainly obvious consequence." Rittenhouse Ent., Inc. v. City of Wilkes-Barre, 861 F. Supp. 2d 470, 480 (M.D. Pa. 2012).

McClarnon asserts that Police Chief Caporali and each of the Borough Council Defendants possessed final decision-making authority for the operations or functions of Vandergrift Borough and its police department and, in that capacity, directed or made specific decisions that deprived McClarnon of her constitutional rights. Allegations that the Borough Council Defendants excluded McClarnon from decision-making meetings and otherwise interfered with her ability to perform official duties, or encouraged or knowingly acquiesced to threats to her and her family with police action in retaliation for the exercise of her First Amendment rights, were actions by policymakers with "final authority" under Monell. Similarly, allegations that Police Chief Caropoli acted on behalf of the Vandergrift Police Department and Borough when he affirmatively declined to discipline, supervise, or train police officers participating in a harassment campaign allege department policy or custom. See also Pembaur v. City of Cincinnati, 475 U.S. 469, 480-81 (1986) (municipal liability may be found under Section 1983 "for a single decision by municipal policymakers," where those policymakers have "final authority to establish municipal policy with respect to the action ordered."). While these claims are tenuous, McClarnon alleges sufficient facts to render her Monell claims nonspeculative and plausible.  Accordingly, it is recommended that the Court deny the Motions to Dismiss McClarnon's claims Monell claims, subject to revisiting this issue at the summary judgment stage after the development of an appropriate record.

### e.    Defendant Moore – Color of Law

Defendant Moore contends that McClarnon fails to state a cognizable § 1983 claim against him because, despite McClarnon's assertions to the contrary, he was not on duty at the time of the assault and therefore was not acting under color of state law.  ECF No. 68 at 3-6.

As previously indicated, Section 1983 provides a private right of action for any person whose constitutional rights are deprived by state officials acting under the color of state law. "'The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" Barna v. City of Perth Amboy, 42 F.3d 809, 815–16 (3d Cir. 1994) (quoting West v. Atkins, 487 U.S. at 49 (quotation marks omitted)). "Accordingly, acts of a state or local employee in her official capacity will generally be found to have occurred under color of state law." Id. at 816.

In addition, individuals who are "possessed of state authority and purport [ ] to act under that authority," such as off-duty police officers, are generally state actors. Griffin v. Maryland, 378 U.S. 130, 135 (1964). "Manifestations of such pretended authority may include flashing a badge, identifying oneself as a police officer, placing an individual under arrest, or intervening in a dispute involving others pursuant to a duty imposed by police department regulations." Barna, 42 F.3d at 816.

Finally, and as argued by McClarnon in the alternative, even if Moore was not acting in his role as a police officer, liability may still attach under § 1983 if in allegedly coordinating her assault, he was acting jointly with the Borough Council Defendants in their retaliatory campaign against her. ECF No. 75 at 30 (citing Dennis v. Sparks, 449 U.S. 24, 27-28 (1980)).

The inquiry into whether a private individual was acting under color of law is fact specific, and the plaintiff has the burden of establishing color of law. Groman v. Twp. of Manalapan, 47 F.3d 628, 638 (3d Cir. 1995) (citations omitted). To conduct this analysis, the United States Court of Appeals for the Third Circuit has "outlined three broad tests generated by Supreme Court jurisprudence to determine whether state action exists," which are as follows:

> [(1)] 'whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state"; (2) "whether the private party has acted with the help of or in concert with state officials"; and (3) whether "the [s]tate has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity.'
>
> Kach v. Hose, 589 F.3d 626, 646 (3d Cir. 2009) (citation omitted). These tests are commonly referred to as (1) the public function test, (2) the close nexus test, and (3) the symbiotic relationship test. Another test, commonly referred to as the 'joint action test," asks whether a private entity was a willful participant in joint action with the state or its agents.' Lugar v. Edmondson Oil Co., 457 U.S. 922, 941-42, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982).

Id. at 514.  "Ultimately, these 'tests' are simply methods to consider whether a private defendant has somehow improperly wielded a degree of power and authority belonging to the state to unlawfully deprive another of constitutional protections."  Cahill ex rel. Cahill v. Live Nation, 866 F. Supp. 2d 503, 510 (W.D. Pa. 2011), aff'd sub nom., 512 F. App'x 227 (3d Cir. 2013).

In this case, McClarnon alleges that Moore's conduct at the time of the assault was in conjunction with the coordinated retaliatory campaign initiated by the Borough Council Defendants, and on behalf of the Borough. ECF No. 35 ¶¶ 60, 78, 83, 84. At this early stage, McClarnon need only plead sufficient facts to give rise to a plausible claim that Moore's conduct violated her rights at the behest of or in furtherance of the Borough officials. She has satisfied her burden, albeit barely.  Accordingly, it is recommended that the Court deny the Motion to Dismiss McClarnon's § 1983 claims against Moore on the basis of the adequacy of allegations of state action, to be revisited after discovery at the summary judgment stage.

### f.    Defendant Moore – Fourth and Fourteenth Amendment Claims

Moore next contends that McClarnon fails to allege facts sufficient to state claims against him for the violation of her Fourth and Fourteenth Amendment constitutional rights.  Moore argues that despite allegations of his coordination and planning of the January 2021 assault and his

conduct in its immediate aftermath, McClarnon does not allege facts stating a claim for the excessive use of force because the actual assault was committed by Defendant Turner.

The Fourth Amendment provides, "[t]he right of the people to be secure in their persons ... against unreasonable searches and seizures, shall not be violated." To state a § 1983 claim for the use of excessive force, a plaintiff must allege that a "seizure" occurred, and that the seizure was unreasonable. Kopec v. Tate, 361 F.3d 772, 776 (3d Cir. 2004). A "seizure" occurs for Fourth Amendment purposes when a government official has, "by means of physical force or show of authority, ... in some way restrained [the person's] liberty." Terry v. Ohio, 392 U.S. 1, 19 n. 16 (1968); Berg v. Cnty of Allegheny, 219 F.3d 261, 269 (3d Cir. 2000). In addition, the seizure and use of force must have been conducted by the named defendant. Thus, liability does not attach where the defendant is not the accused assailant. Jutrowski v. Twp. of Riverdale, 904 F.3d 280, 290 (3d Cir. 2018) (citing Anela v. City of Wildwood, 790 F.2d 1063, 1067–68 (3d Cir. 1986) (observing that defendants may "not be held liable under section 1983 merely because they were members of a group of which some other members were guilty of abuses.")).

Moore is correct that as alleged, the assault was committed by Turner.  However, McClarnon plainly and in detail alleges that Moore personally acted in concert with Turner to plan and carry out the assault and to cover it up after its completion.  "To prevail on a conspiracy claim under § 1983, a plaintiff must prove that persons acting under color of state law 'reached an understanding' to deprive him of his constitutional rights." Jutrowski, 904 F.3d at 293–94 (quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 150-52 (1970)). "After a plaintiff establishes that the object of the conspiracy was the deprivation of a federally protected right, 'the rule is clear that' the plaintiff 'must provide some factual basis to support the existence of the elements of a conspiracy: agreement and concerted action.'" Id. (quoting Capogrosso v. The Supreme Ct. of

New Jersey, 588 F.3d 180, 184–85 (3d Cir. 2009)).  "[I]n the absence of direct proof, that 'meeting of the minds' or 'understanding or agreement to conspire' can be 'infer[red]' from circumstantial evidence. Such circumstantial evidence may include that the alleged conspirators 'did or said something ... to create an understanding,' 'the approximate time when the agreement was made, the specific parties to the agreement[,] the period of the conspiracy, or the object of the conspiracy.'" Id. (citations omitted).

Here, McClarnon sufficiently alleges Moore's active participation in her seizure and a conspiracy to commit an assault in violation of the Fourth Amendment, one that "shocks the conscience," and thus that separately violates her Fourteenth Amendment's substantive due process rights. Accordingly, it is recommended that the Court deny Moore's Motion to Dismiss McClarnon's claims for the violation of her Fourth and Fourteenth Amendment rights.[3]

### 2.    State Law Claims

#### a.  Defamation - Collini

The Vandergrift Borough Defendants move to dismiss McClarnon's defamation claim against Defendant Collini as inadequately stated under applicable Pennsylvania law.  ECF No. 44 at 19-21.  McClarnon concedes that she does not state a cognizable state law claim for defamation against Defendant Collini due to her failure to identify to whom the allegedly defamatory statements were published.  ECF No. 75 at 3 *n*.8.  McClarnon requests leave to amend her complaint to correct this deficiency.  Accordingly, it is recommended that the Court grant McClarnon leave to file one final consolidated Third Amended Complaint correcting this claim *only*.

---

[3] At the conclusion of discovery, Defendants may raise whether the evidence supports McClarnon's allegations that Moore was acting under color of state law in concert with Turner and the Borough Council Defendants in furtherance of alleged retaliation.  However, at this stage of the litigation McClarnon sufficiently, albeit barely, alleges plausible claims for relief pursuant to § 1983.

### b. Defendant Moore – State Law Claims

#### 1. Assault and Battery

Moore contends that McClarnon's state law claims for assault and battery, as set forth in Counts VI and VII, cannot be sustained absent allegations that he participated in the assault with the intent to cause bodily injury. Under Pennsylvania law,

> an individual commits the tort of battery when he or she intentionally causes a "harmful or offensive" contact with another person's body. C.C.H. v. Phila. Phillies, Inc., 596 Pa. 23, 940 A.2d 336, 340, n. 4 (2008). An individual commits the tort of assault when he or she acts to cause an actual battery or to place another person in "imminent apprehension" of a battery, thereby causing the person to be "put in such imminent apprehension." Jackson v. Pa. Bd. of Prob. & Parole, 885 A.2d 598, 601 n.2 (Pa. Commw. Ct. 2005) (quoting the Restatement (Second) of Torts § 21 (1965)).

Zion v. Nassan, 283 F.R.D. at 264 (citations in original). McClarnon plainly alleges that Moore actively participated in placing her in imminent danger of assault by Turner, and that an actual assault occurred as a result. At this stage of the litigation, her allegations are sufficient to state a claim for assault and battery. Brownstein v. Gieda, 649 F. Supp. 2d 368, 375 (M.D. Pa. 2009) (at the pleading stage, it is enough to state a claim for assault and battery where defendants allegedly participated in assault).

#### 2. Negligence

In Count IX, McClarnon alleges that Moore acted negligently in failing to protect her from harm at Turner's hands, and in failing to render aid once she was assaulted. ECF No. 35 ¶¶ 120-122. In his motion to dismiss, Moore asserts that dismissal is warranted because under Section 314 of the Restatement of Torts (Second), Moore had no duty to act, and "there are no facts alleged in the complaint establishing that Moore knew or should have known that Turner posed an unreasonable risk of harm to Plaintiff." ECF No. 68 at 11-13 (citing Yania v. Bigam, 155 A.2d 343 (Pa. 1959)). Yania stands for the general proposition that knowledge of peril alone imposes

28

"no legal, although moral, obligation or duty to go to his rescue *unless [defendant] was legally responsible, in whole or in part, for placing [plaintiff] in the perilous position*." Id. at 346 (emphasis added).  However, in the instant case,  McClarnon plainly alleges that Moore actively planned and coordinated the attack, and thus placed her in the perilous position of being physically assaulted by Turner and failed to stop or warn her.  Moore's resort to common law limitations on the duty to act in the face of the allegations set forth in the Second Amended Complaint raises issues of fact that cannot be resolved at this stage of the litigation.  See e.g., Glass v. Freeman, 240 A.2d 825, 829 *n.*2 (Pa. 1968) (even absent a special relationship, negligence properly may be found when defendant's conduct creates an obvious danger, but he fails to act to prevent harm and otherwise breaches affirmative duty to warn).  It is respectfully recommended that the Motion to Dismiss the negligence claim against Moore be denied.

### 3.  PTSCA

Moore's final argument in support of dismissal raises the Pennsylvania Political Subdivision Tort Claims Act ("PSTCA"), 42 PA. CONS. STAT. § 8541, et seq. The PSTCA provides that, "no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person." 42 PA. CONS. STAT.  § 8541. Municipal employees "are generally immune from liability to the same extent as their employing agency, so long as the act committed was within the scope of the employee's employment." Sanford v. Stiles, 456 F.3d 298, 315 (3d Cir. 2006) (citing 42 PA. CONS. STAT. § 8545). "However, there is an exception to this general rule: Employees are not immune from liability under § 8545 where their conduct amounts to 'actual malice' or 'willful misconduct.'" Id. (quoting 42 PA. CONS. STAT. § 8550)

"Willful misconduct has been defined by the Pennsylvania Supreme Court as 'conduct whereby the actor desired to bring about the result that followed or at least was aware that it was substantially certain to follow, so that such a desire can be implied.' Otherwise stated, the term 'willful misconduct' is synonymous with the term 'intentional tort.' Id. (citing Renk v. City of Pittsburgh, 537 Pa. 68, 641 A.2d 289 (1994)) (emphasis added)." Madero v. Luffey, 439 F. Supp. 3d 493, 511 (W.D. Pa. 2020), *clarified on denial of reconsideration*, No. 2:19-CV-700, 2020 WL 9815453 (W.D. Pa. Mar. 13, 2020).  Here, McClarnon sufficiently alleges facts to state claims for willful misconduct outside the grant of immunity under the PSTCA and, as such, dismissal on this basis is not warranted.[4]

> ### D.      CONCLUSION

For the foregoing reasons, it is respectfully recommended that the Motions to Dismiss filed on behalf of all Defendants, ECF Nos. 43, 59 and 67,  be denied except as follows:

(1) It is recommended that McClarnon's Fourteenth Amendment claim for official oppression against all Defendants be dismissed with prejudice.

(2) It is recommended that McClarnon's Official Capacity claims against all Vandergrift Borough Council and Police Department Defendants be dismissed with prejudice.

(3) It is recommended that McClarnon's state law defamation claim against Defendant Collini be dismissed without prejudice to file one final consolidated Third Amended Complaint within fourteen days correcting the identified pleading deficiencies.

---

[4] McClarnon's negligence claims against Moore also survive the PTSCA to the extent such claims are pled in the alternative, and arise against him in his personal capacity, and not in his capacity as a municipal employee. 42 PA. CONS. STAT. § 8545. The factual inquiry necessary for this determination is premature at the pleading stage.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1), and Local Rule 72.D.2, the parties are permitted to file written objections in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation.  Failure to timely file objections will waive the right to appeal.  Brightwell v. Lehman, 637 F.3d 187, 193 n. 7 (3d Cir. 2011).  Any party opposing objections may file their response to the objections within fourteen (14) days thereafter in accordance with Local Civil Rule 72.D.2.

Respectfully submitted,

*/s/ Maureen P. Kelly*
MAUREEN P. KELLY
UNITED STATES MAGISTRATE JUDGE

Dated: January 6, 2022

cc:     The Honorable Robert J. Colville
        United States District Judge

        All counsel of record by Notice of Electronic Filing